## County Board of Education of Warren County v. Durham, et al.

(Decided April 24, 1923.)

### Appeal from Warren Circuit Court.

1. Schools and School Districts—Board of Education not Bound by Contract Made by Unauthorized Agent.—The general rule is that a municipal corporation, such as the board of education, is not bound by a contract made for or on its behalf by an agent who has no authority from the board to contract.

2. Municipal Corporations—Governing Body can Speak Only Through its Records.—The governing body of a municipal corporation can speak only through its records, and can confer authority to make contracts only by proper proceedings at a meeting regularly called and held, where its acts are duly recorded and authenticated.

3. Schools and School Districts—Resolution Authorizing Individual to Build Addition Does not Authorize Him to Tear Down Old Schoolhouse and Construct New Building.—A resolution adopted by a school board, authorizing an individual to build another room and add a porch to a school house, does not authorize him to make a contract to tear down the old schoolhouse and erect a new one.

4. Schools and School Districts.—Contractors are Charged with Knowledge of Authority of Agent Claiming to Represent Board.—Contractors for a school building are bound to know that the agent of the school board, with whom they were dealing, had only limited authority, and that it was their duty to look through the records of the board to ascertain the powers of the agent.

5.  Schools and School Districts—Teacher has no Authority to Act for Board in Accepting Building.—A school teacher has no authority to act for the board of education in accepting a new school building, and therefore the fact that she entered into the building and taught school therein does not ratify the unauthorized contract by which the building was erected.

6.  Schools and School Districts—Necessary Occupation of Unauthorized School Building by School Held not to Ratify Unauthorized Contract.—Where an unauthorized contract had been made to tear down the old school building and erect a new one, the act of the school teacher and pupils in entering into possession of the new building, which was necessary, if they were to hold school at all, and which was made before the board of education had knowledge that the new building was constructed, was not a ratification of the unauthorized contract.

7.  Schools and School Districts—Cannot Confer on Agent Discretion to Determine Character and Cost of New Building.—The board of education cannot confer its powers involving the exercise of discretion on another, and therefore cannot authorize an agent to construct an addition to a school building giving the agent authority to determine the character, size, materials, and cost of the addition.

8.  Statutes—Provision in Statute Requiring School Building Contract to be Signed by County Superintendent Held to Have Taken Effect Immediately, Though Others Could not.—School Act 1920 (Laws 1920, c. 36), which contained an emergency clause and therefore took effect immediately, put into effect the provision thereof requiring school building contracts to be signed by the county superintendent of schools in order to be valid, though there were provisions in the act relating to the election of county superintendents of schools, which could not take effect immediately.

SIMS & SIMS for appellant.

BYRON RENFREW, JOHN B. RODES, and T. W. & R. C. P. THOMAS for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Reversing.

The board of education of Warren county, on April 30, 1920, passed a resolution, reading:

"C. G. Davenport was ordered to build another room and add a porch to schoolhouse."

For several years before the passage of the foregoing resolution Davenport had been a member of the board of education but his term expired a few days before its date. The school house to which reference was made in the resolution was known as "Stephens Chapel," in which district Davenport lived. The schoolhouse, besides be-

ing in bad repair, was insufficient in size to accommodate the student body. On August 12th the board of education entered the following minute:

"A request from Stephens Chapel for better schoolhouse was read. Mr. Sublett, chairman of division 6, was requested to have the tent and house fixed up so the children will be comfortable. Also Mr. Sublett will have T. R. Spencer to clean out well, and he will report at next meeting." In order to take care of the overflow of pupils at the school a tent had been erected.

Some time in the spring of 1920 Davenport, without further authority than the minute above copied, from the board of education, entered into a contract with appellees, Durham and Kittrell, by which they were to furnish all the material and do all the work of tearing away the old schoolhouse and erecting a new one on the same site at the price of the cost of the materials and labor, plus ten per cent of cost thereof. Pursuant to this contract appellees began about the middle of September of that year to take down the old building and to erect a new one. It was completed some time in November. The school, which was going on in the old building and tent when the work of erecting the new building was commenced, discontinued until the new building was ready, when it resumed its work in the new building. About the same time appellee contractors presented to the board of education a bill for $6,686.25 for the material and work employed in the erection of the house plus ten per cent. As the board of education did not even so much as have information that a new schoolhouse was being erected, the bill was promptly rejected on the grounds that the work had not been authorized. When the board refused to pay the bill, this suit was commenced by the contractors to recover said sum.

One of the members of the board of education resided in the district where the schoolhouse was erected and he (Sublett) knew that a new house was being built but he did not contract for its construction. The entire work, appellees claim, was performed under a contract made by them with C. G. Davenport, pursuant to the resolution first above copied. The board of education adopted no plans for the schoolhouse, made no specifications and entered into no contract for its construction.

Is the board of education liable under the foregoing facts either for the contract price or upon *quantum*

*meruit,* to the contractors for the cost of the new building?

The general rule is that a municipal corporation such as the board of education (Brown v. Board of Education, 108 Ky. 788) is not bound by a contract made for or on its behalf by an agent who has no authority from the board to enter into such contract for it.   The governing body of a municipal corporation can speak only through its records.   It can confer authority to make contracts only by proper proceedings had at a meeting regularly called and held for that purpose and where its acts and proceedings are duly recorded and authenticated.   Davenport was not a member of the board of education and had no authority whatever to speak for it, except such as the resolution above copied conferred upon him.   That resolution merely directed him to repair the old schoolhouse, or rather to enlarge it by building another room and adding a porch.   No doubt this room was intended to take the place of the tent then in use.   Instead of this, it appears from the evidence that Davenport decided that the district should have a new schoolhouse; that the old building was so dilapidated as to be of little or no value, and without conferring with the board of education, or obtaining authority from it, immediately entered into a contract with appellees to raze the old building and erect a new one on the same spot, agreeing to pay them the cost of the material and labor and ten per cent additional. Plainly Davenport had no such authority.   He had no power to enter into a contract for the erection of the new school building.   He violated both the letter and the spirit of the resolution under which he acted when he contracted for the razing of the old building.   The attempted contract between Davenport and appellees was unenforceable as to the board of education.   Appellees as contractors were obliged, in dealing with Davenport as the agent of the board of education, to know that he had only limited authority to make such contract, and further to know that whatever authority had been conferred upon him was shown by the records of the board of education, to which it was the contractor's duty to look to ascertain his powers.   McKechnie v. Wayne County, 198 Ky. —; Floyd Co. v. Oswego Bridge Co., 143 Ky. 693; Millikin, etc. v. Gillum, 135 Ky. 281; Pulaski v. Sears, 117 Ky. 249.

It is insisted, however, by appellees that the board of education is bound for the cost plus ten per cent of the new school building, because it accepted and used the

school house immediately upon its completion and thereby ratified the contract made by its agent Davenport.    True, the teacher of the district school upon the completion of the building immediately resumed her work and occupied with the school the new school building.    She was not acting, however, for the board of education in entering and taking charge of the school building.    In fact the school board did not have knowledge of the existence of the new schoolhouse.    The school teacher had no power or authority to speak or act for the board of education in that matter.    Moreover, we have held in several cases where public improvements have been made and members of the public use or employ the same before accepted by those authorized to make such acceptance, such acts do not work an estoppel against the municipality. For instance, where a municipality contracts for the construction of a street and the general public begins to use it before the same has been accepted by the municipal authorities, there is no acceptance and such acts do not amount to an estoppel for the public of necessity used the new street.    So here the teacher and the children had no other school buildings—their old one having been torn away—and they entered the new building in an emergency and under stress of circumstances and employed the new building to carry on their work.    As soon as the board learned of the erection of a new building and received appellees' claim for the cost, plus ten per cent, it rejected the building and demanded that appellees remove the same from its grounds.

There is yet another and better reason why the appellees are not entitled to recover in this action.    A municipal board like appellant cannot confer by resolution, order or otherwise, its powers involving the exercise of discretion.    The resolution directing Davenport to "build another room and add a porch to the schoolhouse" was invalid because it undertook to vest him with the power to exercise the discretion reposed in the board. In other words, the resolution did not fix the dimensions or state the nature or cost of the improvement.    Davenport, if the resolution may be depended upon, was given absolute discretion to build as large or as small a room as he thought proper, of any material that he thought best, and at any cost in his discretion.    Such a discretion is not conferrable by the board of education. 19 R. C. L., p. 789; Sable v. Louisville Baptist Orphans' Home, 92 Ky. 89; Floyd Co. v. Oswego Bridge Co., 143

Ky. 693; Millikin, Treasurer, etc. v. Gillum, etc., 135 Ky. 281; Pulaski County v. Sears, 117 Ky. 249.

The school act of 1920, which is chapter 36 of the Acts of the General Assembly of that year, provides that all contracts of the board of education, such as the one for the schoolhouse under consideration, to be valid, must be approved in writing by the county superintendent of schools, and no contract entered into by the board of education without such approval shall be valid or enforceable. This act carried an emergency clause and therefore took effect several weeks before the resolution, which appellees relied upon, was passed by the board of education of Warren county. It was likewise in force at the time Davenport undertook to contract with appellees in the summer of 1920, and at the time appellees undertook to erect the schoolhouse in the fall of the year. It is argued, however, that inasmuch as certain parts of the said act did not immediately become operative the whole act was in abeyance at the time of the making of the contract involved in this litigation. We can see no reason why that part of the act requiring contracts to be approved in writing by the superintendent of schools should not have been as effective on the day after the act became operative as any other statute. Certainly there was no reason for holding it in abeyance even though a new system for electing county superintendents was provided. That part of the act involved says: ''The county superintendent shall approve in writing all contracts, of any kind, entered into by the county board of education, and no contract entered into by the county board of education without the written approval of the county superintendent of schools shall be valid.''

The concluding clause of the act reads:

''Whereas the interests of education require that this law become immediately effective an emergency is hereby declared to exist, and this law shall be effective from and after its passage and approved by the Governor.'' It was approved March 22, 1920. We are of opinion that the act took effect from and after March 22, 1920, and that the board of education could not make a valid contract without the approval in writing of the superintendent of schools.

For these several reasons the judgment must be reversed for proceedings consistent herewith.

Judgment reversed.