## Allen County Board of Education v. Scottsville Builders' Supply Company.

(Decided February 19, 1924.)

### Appeal from Allen Circuit Court.

Schools and School Districts—Furnisher of Materials for Building Charged with Knowledge of County Board's Records, and Latter Not Liable for More than Amount it was to Pay Toward Construction.—Where one furnishing materials for the construction of a school building knew that the school was to be constructed under some kind of an arrangement between the county board of education and the patrons of the school, it was charged with knowledge of what the board's records showed on the subject, and that the board was to pay only a certain amount toward the construction, and the board was not liable for more than such amount, and it was immaterial that a teacher was employed and the school conducted, as far as ratification was concerned.

RODES & HARLIN for appellant.

OLIVER & DIXON for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

The Beech Grove and White Oak school districts in Allen county were consolidated and it became necessary to construct a consolidated schoolhouse.   The Scottsville Builders' Supply Company furnished lumber and other materials of the value of $1,971.50, and brought this suit against the county board of education and Dr. A. J. Dixon to recover that sum, subject to a credit of $946.50. The action was dismissed as to Dixon, and on final hear-

ing judgment was rendered against the county board of education for the amount sued for. From that judgment this appeal is prosecuted.

The petition alleged in substance that the board of education of Allen county and Dr. A. J. Dixon were indebted to plaintiff in the sum of $1,035.50, balance due for material and lumber furnished in the erection of a consolidated school building for the use and benefit of the consolidated district, known as the White Oak district and Beech Grove district. The petition further alleged that plaintiff was informed that some kind or character of contract or agreement was entered into by the county board of education and the patrons of the school district by which they were to share jointly and equally the expense of the erection of the building, and that Dr. A. J. Dixon, acting in the capacity of agent for the patrons of the school district, entered into negotiations with the plaintiff for the purchase of said materials handled by the plaintiff to be used in the construction of said building, and that A. J. Dixon stated to him that he would guarantee the payment of the proportionate part that might be owing by the patrons of the district. It was also alleged that it was represented to plaintiff by the chairman of the county board of education that said board had some kind of agreement with the patrons of said school district, by which said board was to pay its proportionate part of the cost of the erection of said building, and relying upon the statements made both by the chairman of the board of education and A. J. Dixon, as representative of the patrons of said district, plaintiff furnished and delivered the bill of lumber and materials set forth in the itemized statement. The petition also undertook to show a "furnisher's lien" against the building.

Aside from orders directing the payment to the Scottsville Builders' Supply Company at one time of $400.00, and at another time of $500.00, the only official action taken by the board of education with reference to the construction of the building is as follows:

"Scottsville, Ky., Aug. 2nd, 1919.

"Upon motion Felton Landers and Dr. A. J. Dixon are appointed to assist in building new schoolhouse at Trammel, and S. M. Eddy is appointed to represent the county board, motion carried.

"Scottsville, Ky., Aug. 21, 1918.

"Upon motion, it is ordered that we allow $700.00 for county's part in building new house at Beech Grove; patrons of district to pay the balance. Motion carried.

"Scottsville, Ky., 10/14/1918.

"Upon motion, it is ordered that we reconsider building a new school house, and allow one-half the expense in building said house with the uderstanding that our part is not to exceed $900.00. Motion carried."

In support of plaintiff's claim, Allen Livingston testified that he understood that the county board and the district agreed to pay one-half of the expense of building the school, and that he got this information through Mr. Shaw, the county superintendent, and Dr. Dixon. When it was first started, he understood the county board was to pay $700.00, but later on the arrangement was changed, and the sum was increased $200.00, making the amount to be paid by the board $900.00. In furnishing the materials he was looking for his pay to the district which proposed to pay about what the county board put in. While he was looking to the district to pay, he was looking to the county board to pay if the district didn't pay. Afterwards, he testified that his understanding was that the county board and district should go "halvers" and build the schoolhouse, but, on being asked the question whether there was any kind of arrangement whereby the county board of education promised or agreed to pay him any amount in excess of $900.00, he replied, "No, not that I know of." On redirect examination, he testified that he had furnished a lot of material before he knew of the $900.00 resolution, and that he furnished the material in reliance upon a statement made by Mr. Shaw, the county superintendent, that the county board was to pay half the cost of the building. Dr. Dixon testified that they first agreed on a two-room house, and the board agreed to pay $700.00. After that they changed to a three-room house, and the board agreed to pay $900.00, but he would not accept that. After that he asked Mr. Shaw if they would put up a dollar every time the district did, and Shaw said, "I think we ought to do that," but he never had any contract that the board would pay half. After they got started, however, and it was found that the schoolhouse would cost a great deal more, Pro-

fessor Shaw and one or two members of the board told him to go ahead.

Appellee concedes that it had no binding contract with the board of education, but insists that as the material was used in the construction of the schoolhouse, and the schoolhouse was accepted by the board and is now being used by the patrons of the district, equity and good conscience require that the board should make restitution or pay for the material furnished. We have gone to the extent of holding that where a bridge company furnished certain bridges for a county under a void contract with commissioners appointed by the fiscal court, and the county, after the bridges had been constructed in accordance with the contract, refused to pay for them, the bridge company was entitled to remove the bridges and all the material furnished in their construction. We also held in Milliken v. Gillum & Son, 135 Ky. 280, 122 S. W. 151, that where plaintiffs discounted two warrants issued to a bridge commissioner upon a void order of the fiscal court, and part of the money received from plaintiffs was used to construct a bridge which was accepted by the fiscal court, plaintiffs were entitled to recover of the county the amount they furnished to construct the bridge. But the principle is not applicable to the facts here presented. Appellee knew that the school was to be constructed under some kind of arrangement between the county board and the patrons of the school, and was charged with knowledge of what the board's records showed on the subject. County Board of Education v. Durham, 198 Ky. 733, 249 S. W. 1028. It knew that the county board first agreed to allow $700.00 for the county's part in building the new schoolhouse, with the understanding that the patrons of the district were to pay the balance, and that about a month later the board reconsidered the matter and agreed to bear one-half the expense of building the schoolhouse with the understanding that its part was not to exceed $900.00. With this knowledge the materials were furnished. In furnishing the materials in excess of the amount for which the board was liable, it acted at its peril so far as the board was concerned, and had no right whatever to look to the board for payment. The board paid to appellee the entire $900.00, and at no time did the board as a body approve the bill or the action of the agent of the patrons in exceeding the estimated cost of the building, and the mere fact that a teacher was employed and a school was con-

ducted in the schoolhouse was not such a ratification as would impose any liability whatever on the board in excess of the limit fixed by its order. It follows that the petition should have been dismissed.

Judgment reversed and cause remanded with directions to enter judgment in conformity with this opinion.