PARKS, A TAXPAYER, *v.* CLEVELAND RY. CO. ET AL.

(Decided June 9, 1930.)

*Messrs. Day & Day,* for plaintiff.
*Messrs. Squire, Sanders & Dempsey* and *Mr. H. H. Burton,* for defendants.

LEVINE, J.   The case is presented to this court on appeal.   The plaintiff brought this action as a taxpayer of the city of East Cleveland, in its behalf, to

enjoin an alleged abuse of its corporate powers and the performance of a contract made in its behalf, alleged to be in contravention of law. Specifically stated, plaintiff seeks to enjoin defendant, the Cleveland Railway Company, from collecting an increased rate of fare on its cars, which was fixed by a board of arbitration in June, 1928. It is admitted that in 1918 the commission of the city of East Cleveland, which is the governing body of the municipality, in pursuance to certain powers given the Commission by virtue of the East Cleveland charter, granted to the railway company a franchise for the operation of its railway in said city. The pertinent parts of said franchise are the following:

"Sec. 14. The rate of fare herein provided shall continue and be in force for a period of five (5) years from and after the acceptance of this ordinance by the company in the manner hereinafter provided, and the taking effect of said ordinance, and it is further provided that if the City or the Company fail to notify, in writing, the other party of its desire to modify or change the rate of fare herein provided, at least six (6) months before the expiration of said five year period or any succeeding five year period, then in that event, the rate of fare then in effect at the end of any five (5) year period shall continue and be in force as above fixed as to each succeeding five year period of the grant and extension herein made.

"Should the City or the Company give such notice, as above provided, the rate of fare shall be arbitrated between the City and the Company, for any five (5) year period during the life of this grant, and such question shall be submitted for arbitration to a

board of arbitration selected in the following manner: The Company or the City demanding such arbitration shall within ten (10) days from the service of said notice, name its representative upon said board and notify the other party.

"Within ten (10) days thereafter the representative of the other party shall be named by such party and notice of such selection given; failure to do so shall entitle the party demanding the arbitration to name such second arbitrator. The two thus selected shall, within ten (10) days after the appointment of the one last named, select a third arbitrator, and if the two said arbitrators are unable, within said ten (10) days to agree upon such third arbitrator, then upon the application of either, the city or the company, the person who is District Judge of the United States for the Northern District of Ohio, Eastern Division, or such district as shall then embrace the City of Cleveland, shall have the power to appoint such third arbitrator, five days notice of the application to said District Judge being given by the party applying, to the other party.

"In the event of the disqualification or refusal to act of the person who is Judge of the District Court of the United States, as herein provided, any person who is Judge of the Circuit Court of the United States of the Circuit in which the City of Cleveland shall then be situated, shall, on request, as herein provided, have power to appoint such third arbitrator, as hereinbefore provided.

"All expenses of every kind incurred by any Board of Arbitration appointed hereunder, excepting witnesses' fees and the fees of the arbitrators, shall be fixed by the Board of Arbitration and in-

cluded as a part of its award. The Company and the City, respectively, shall pay the fees of the arbitrator that it shall select, and the company or the city, respectively, demanding such arbitration, shall pay the fees of the third arbitrator. The Company and the City shall each pay the fees of its own witnesses. A decision of any two or more of such arbitrators shall be final and binding on both the city and the company.''

This franchise was accepted by the Cleveland Railway Company, and later ratified by the electors by a large vote.

In 1923, at the end of the first five-year period, the railway company demanded an arbitration under the terms of its franchise, which arbitration was had, and the fare was increased. In 1928 the railway company demanded a second arbitration, setting forth as its reason the mounting cost of transportation. This second arbitration was had without protest on the part of the commission, and an award was made by the arbitrators, which went into effect June 19, 1928. One arbitrator was selected by each of the parties, and the third was selected by Judge Westenhaver of the United States District Court, as provided in the franchise. This award is attacked in the petition upon the following grounds:

''1. That the fixing of fares is a legislative matter which could not be delegated to arbitration.

''2. That the rates of fare fixed are 'unreasonable, oppressive and unjustifiably burdensome.'

''3. That the rates of fare in East Cleveland made dependent upon rates in Cleveland are invalid.''

The defendant, the Cleveland Railway Company,

filed an answer in the court below denying the allegation as to the lack of power of the commission to submit the question of fares to arbitration, and denied that the fares fixed by the arbitrators were unreasonable, burdensome, or oppressive.

The answer of the city of East Cleveland makes the same denials.

The defendant, the Cleveland Railway Company, filed an amended and supplemental answer in this court pleading estoppel.

The principal ground of attack is that the power to fix rates of fare is a legislative function, which, under the charter, is vested solely in the commission; that the commission is without power to delegate its legislative function to any other person or body of persons; that the attempt on the part of the commission to divest itself of this legislative power renders the entire franchise originally granted null and void and without effect whatsoever.

It will be observed at the outset, if the contention of the plaintiff is to be sustained by this court, the necessary consequence would be to render the franchise under which the railway company is operating its cars in the city of East Cleveland null and void and of no effect.

The provision relating to the fares to be charged by the company in the operation of its cars is, of course, an essential part of the franchise, and it is conceded by counsel for the plaintiff that, if his contention is found to be correct, it would nullify the entire franchise.

The prayer of the plaintiff is directed solely to the increased rate of fare. He does not pray that the railway company be enjoined from operating its

cars for lack of a valid franchise. He seems to be content to allow the railway company the right to operate its cars over the streets of East Cleveland and to charge the old rate of fare. The award of the arbitrators alone is under attack, and an injunction is sought to restrain the Cleveland Railway Company from charging the increased rate of fare awarded by the arbitrators.

It would seem, in view of the contention of the plaintiff, that the proper method of attack would be some action to oust the railway company and its cars from the streets of the city of East Cleveland. If the franchise is a nullity, the railway company has no right on the streets of East Cleveland. It could not impose any rate of fare, whether it be nine cents, which is the increased rate of fare, five cents, or any other amount. If it be held that the railway company is operating its cars over the streets of the city of East Cleveland without a legal or valid franchise, there is a legal way of forcing the company off the streets, but, as long as the railway company is permitted to operate its cars without a franchise, it would seem that the amount of fare to be charged is purely a matter between the railway company and the individual passengers who see fit to use the cars.

If there is no franchise, there is no contract between the city of East Cleveland and the Cleveland Railway Company. The Cleveland Railway Company would then be regarded in the light of a person who has conveyances for hire, and the amount to be charged is purely a matter of bargain between the users of the conveyances and the owners and operators of the same.

We incline to the opinion that the question of the

validity of the franchise cannot be tested by the present injunction suit, which is aimed solely and entirely at the increased rate of fare which was awarded by the arbitrators, and is not in the slightest directed against the rights of the railway company to run its cars over the streets of the city of East Cleveland.

If, for sake of argument, it be held that the question of the validity of the franchise can be tested in this suit, we are then called upon to determine whether the provision of the franchise relating to the modification or change of the rate of fare every five years is a valid provision.

It is urged that the method of determining the modification or change of fare by the award of the arbitrators as provided in the franchise is invalid on the ground that ''there is no power in the commission or in the municipality itself to provide for fixing of fare by the board of arbitration; that the attempt to do so in this case was an unlawful delegation of legislative duty and hence any action thereunder is illegal, void and of no binding effect.''

The city of East Cleveland is operating under a charter which was adopted by it pursuant to Sections 3 and 7 of Article XVIII of the Constitution of Ohio. Section 3, Article XVIII, provides:

''Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.''

Section 7, Article XVIII, provides:

*Home Rule.* ''Any municipality may frame and adopt or amend a charter for its government and

may, subject to the provisions of Section 3 of this Article, exercise thereunder all powers of local self-government."

The commission of the city of East Cleveland is concededly the proper body to deal with the matter of a franchise in behalf of the city of East Cleveland. Our attention is directed to Section 4, Article XVIII, of the Constitution of Ohio, which provides:

*Public Utilities.* "Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility."

Section 5, Article XVIII, provides as follows:

*Public Utilities.* "Any municipality proceeding to acquire, construct, own, lease or operate a public utility, or to contract with any person or company therefor, shall act by ordinance and no such ordinance shall take effect until after thirty days from its passage."

Our particular attention is directed to the language in the last-named section, "or to contract with any person or company therefor, shall act by ordinance." It is pointed out in support of the contention of plaintiff that the matter of granting franchises is the exercise of a legislative function on the part of the commission; that, if a change in the rate

of fare is desired, the commission must first pass an ordinance to that effect, which may be accepted or rejected by the railway company.

The provision of the franchise, it is contended, divests the commission of its legislative power to fix rates, and delegates this power to a board of arbitration. One can readily see that this route of effecting a change in the rate of fare by the passage of an ordinance would be a convenient route if the city of East Cleveland seeks a change or modification. It is difficult, however, to conceive how the railway company could bring about a change or modification by the passage of an ordinance. The city of East Cleveland is represented by its commission, which is the governing body of the municipality. If any ordinance is passed, it is passed by that body. The railway company has no power to introduce ordinances nor to compel their passage.

When the original franchise ordinance was passed by the commission of the city of East Cleveland, and accepted by the railway company, it provided a method for change or modification in the rate of fare every five years, if desired by either party. Apparently the contracting parties realized that it is not possible to foresee in advance the rapidly changing conditions which would make the original rate of fare of five cents unfair or unreasonable. The parties sought to find some method whereby a change or modification in the rate of fare at the expiration of each five years could be brought about. Were we to adopt the view of plaintiff, there is but one method, and that is by passage of an ordinance by the commission fixing a different rate of fare,

and after its passage submission of it to the railway company for acceptance or rejection. There is no other way.

As has already been pointed out, this method of modifying or changing the rate of fare by ordinance is open to but one party, namely the city of East Cleveland, through its commission, which is its governing body. There is no possible method that we can think of whereby the Cleveland Railway Company could seek a change or modification in the rate of fare by the passage of an ordinance, as the power to pass ordinances is in only one of the contracting parties.

We have examined the many citations set forth in the brief of counsel for plaintiff, which are all to the effect that a legislative body cannot divest itself of its legislative function by investing another body with such function.

We are of the opinion that a clear understanding of the constitutional provisions from which the municipality derived its charter making power, and, also, of the constitutional provision which enables municipalities to contract with any person or company for the operation of a public utility, will suffice for our purpose.

Section 5, Article XVIII, of the Constitution of Ohio, provides that "any municipality proceeding * * * to contract with any person or company therefor [meaning a public utility], shall act by ordinance." There can be no doubt that a franchise for the operation of a public utility is designated in the Constitution itself as a contract. The procedure for the entering into of such a contract or the granting of a franchise is by ordinance.

The original franchise of 1918, granted by the commission of the city of East Cleveland to the Cleveland Railway Company, was a contract entered into between the municipality and the railway company. It was passed, as provided in the Constitution of Ohio, in the form of an ordinance, which was accepted by the railway company. By its terms the railway company may run and operate its cars over the streets of the city of East Cleveland for a period of twenty-five years. Accordingly, the railway company proceeded to improve its facilities by the re-laying of old tracks, by building new ones, by the purchase of new street cars, by the building of car barns, and by investing large sums in necessary equipment. It did it all on the basis of its franchise, which had a duration of twenty-five years. If it were possible upon a mere technicality to oust a public service corporation from the streets of a municipality after it had done all that is possible on its part to be done by way of providing service, and by investing immense capital to provide such service, it would be unsafe for any public service corporation to enter into any contractual or franchise relation with any municipality.

We are of the opinion that the ordinance of 1918, whereby a franchise was granted to the railway company by the commission of the city of East Cleveland, was a contract binding upon both parties, from the provisions of which neither party can escape without mutual consent.

Generally speaking, municipalities have power to submit disputes to arbitration unless expressly forbidden. There is no such prohibition under the Con-

stitution of Ohio or under the charter of East Cleveland.

2 Ruling Case Law, 357: "A municipal corporation, unless restricted by its charter, has the power to submit any controversy to arbitration, and the legislative body thereof has implied power to bind the corporation by such a submission."

Dillon on Municipal Corp. (5th Ed.), volume 2, page 1240, Section 822: "It would seem to follow therefrom that a municipal corporation, unless disabled by positive law, *could submit to arbitration* all unsettled claims with the same liability to perform the award as would rest upon a natural person."

The authorities cited by counsel for plaintiff that the legislative function of a municipality cannot be delegated, unless expressly authorized by statute, are not applicable to the case at bar, because these decisions were had in various states where municipal powers depended on statutory authority. In Ohio, purely local municipal powers depend solely and directly upon the State Constitution. The State Constitution authorizes municipalities in their proprietary capacities to make contracts with private companies for the operation of public utilities, as was done in the case at bar.

Since a franchise for the operation of a public utility granted by a municipality is designated in the Constitution as a contract, it comes within the general rule which permits municipal corporations, in the absence of an express prohibition, to submit controversies to arbitration.

We hold that the arbitration provision found in the franchise in the case at bar is a valid provision,

and a proper exercise of the charter powers on the part of the commission of the city of East Cleveland. There was clearly a dispute between the railway company and the city of East Cleveland, as is manifested by the exchange of correspondence and the various conferences had between the officials of the railway company and the members of the commission, acting for the city of East Cleveland.

Acting in accordance with the provisions of the franchise, a board of arbitration made its award, and we hold that it is binding on both parties. It follows, therefore, that the petition for injunction must be denied.

In view of our holding it becomes unnecessary to consider the question of estoppel or the question of capacity of the plaintiff to sue. A decree will be drawn in accordance with this opinion.

*Decree accordingly.*

VICKERY, P. J., and SULLIVAN, J., concur.