## Parsons v. Ball.

(Decided December 2, 1924.)

### Appeal from Harlan Circuit Court.

1. Landlord and Tenant—Provisions of Lease as to Ownership of Buildings Erected by Tenant Construed.—Where lease for seven years with option for renewal for eight years provided that buildings, to be built by lessee, at end of time stated should return to lessor, they were to become lessor's at end of seven years, unless lessee elected to renew lease for additional period, in which case they were to become lessor's at end of that period.

2. Landlord and Tenant—Forfeiture for Failure to Repair Not Provided for in Contract of Lease Not Implied.—Where contract of lease did not provide in terms for forfeiture of leased premises or of lessee's rights for failure to keep houses in proper repair, forfeiture will not be implied.

3. Landlord and Tenant—Failure to Keep Property in Repair *Held* Not to Justify Refusal to Renew Lease.—Where contract of lease did not provide in terms for forfeiture of premises or of lessee's rights for failure to keep houses in repair, failure to keep property in proper repair did not justify refusal to renew lease according to terms of contract.

4. Landlord and Tenant—Lessee Held Entitled to Renewal at Reasonable Rent Fixed by Arbitration· According to Contract.—Where lessee came to lessor on expiration of lease containing option of renewal to see about renewal, and on refusal of lessor to submit question of rent to three disinterested parties tendered rent payable under old lease, he was entitled to renewal of lease at reasonable rent to be fixed by three disinterested men according to contract.

R. L. POPE and F. L. HUFF for appellant.

HALL, JONES & LEE for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

On October 15, 1915, G. W. Ball leased to H. L. Parsons a small tract of land lying on Martin's fork in Harlan county. The material provisions of the contract are as follows:

"The first party agrees to lease to the second party for seven years from January 1st, 1916, for the sum of $15.00 per year. Second party agrees to pay to the first party $15.00 in advance the first of each year for the land for seven years.

"And at the end of seven years first party agrees to rent to the second party the same boundary of land alone for eight years longer at a reasonable price; if necessary the price of the rent shall be set by three disinterested men to say what the rent of the land is worth. Second party agrees to build a four-room house on the land and have the right to build any other buildings that he needs and at the end of time stated above written expires all buildings return back to the first party. Second party is to keep the road open as it is now."

On March 27, 1923, Ball brought this suit against Parsons for a construction of the contract, and a determination of the rights of the parties under the contract. The petition proceeds on the theory that Parsons was not entitled to retain the premises for the period of eight years after the expiration of the seven-year period be-

cause he had permitted the houses which he had erected on the land to fall into decay, and Ball had been required to expend a large sum to put them in good repair, and on the further ground that Parsons neither notified him of his intention to extend the lease, nor offered to pay a reasonable rental for the extended period. On final hearing the court adjudged that as Parsons made no effort to avail himself of his option to renew or re-lease the property for the period of eight years, the lease expired on January 1, 1923, the end of the seven-year period. From that judgment Parsons has appealed.

After the execution of the lease, Parsons built two houses on the land, and also drilled a well, at the expense of several hundred dollars. According to Ball and his witnesses Parsons permitted the houses to fall into decay, and it was necessary for Ball to expend $200.00 to put them in proper repair. On the other hand, Parsons' evidence is to the effect that there was complaint only of the condition of one of the houses, and that he spent about $80.00 putting it in proper repair.

Ball's evidence as to what occurred between the parties at the end of the seven years, is as follows:

"60. Did he make any effort at the end of the seven years to secure any arbitration to try to ascertain what would be a reasonable rental value of this land? A. He came around about the 1st of January and asked if I had not took possession too quick, and I told him no, and he said his lawyer said to come and offer me $15.00 to take it or leave it.

"61. Did he make any tender of the $15.00 or just tell you that the lawyer said to offer it to you? A. He pulled it out of his pocket and offered it to me, and said his lawyer said for me to take it or leave it.

"62. Then he was asking you to permit him to fix the value of this property at $15.00 per year for another year, and said to you if you would not take that he would not give you anything? A. He said he would give $15.00 for the next year.

"15. I believe you stated that the defendant came to your house along about the 1st of January of this year and made you a tender of $15.00 per year for the payment for the succeeding year of 1923? A. Yes, sir, that is correct.

"16. You didn't tell him then, did you, Mr. Ball, that you wanted any more for this property? A. I told him I would not rent it until he fixed the houses.

"17. Did you tell him the property was yours and he could not have it? A. I told him that it fell back to me after the seven years.

"18. Did you say anything about leaving it to three disinterested parties as to what you should get for the rent of this property for the next eight years? A. He named it. Lee named it. I told him he was willing to it when he got them houses fixed up.

"19. He told you then that the houses was his? A. He said they was his and I told him they was mine according to the contract."

On the other hand, Parsons tells what occurred in the following language:

"A. Yes, sir, on the first day of January of this year I went to hunt Mr. Ball up and see whether he wanted to lease the contract as before, or not, or what price he wanted to ask, if he wanted to ask more for it, or whatever he wanted to do, and I run across him and asked him if he wanted to re-lease the rent, and he said no, and I had $15.00 in my pocket, and I took it out and said here's $15.00 for this year's rent like I been paying, and he said I don't want it. I owe you something like that, and run his hand in his pocket and pulled out $6.00 and gave me. We were saying something before that, but I don't remember what was said exactly.

"62. About what? A. Before I made a tender to him of the money for the rent, he was saying something.

"62. You made tender to him of $15.00? A. I certainly did, and he said he didn't want it, and I asked him something about what was he trying to take possession, I don't remember exactly, anyway I said aren't you taking possession too soon, and he said no.

"64. Was there anything else said; if so, tell what it was? A. I don't remember how he did say it now; anyway he said he thought that I had had the land long enough when I offered him the $15.00; I believe that was the way he spoke it.

"65. What was your answer to that, if you made any answer. A. Why, I pulled out the contract and asked him to read that; that is the best I remember of what was said.

"66. Well, did he read it? A. I don't think he did, but his girl did; she read it twice, I think.

"67. What was said about the contract, if anything? A. About all that was said, I believe she read it twice, once or twice; I asked about reassessing the land and he said he had thought I had had it long enough."

Our construction of the contract is, that any buildings which Parsons erected on the land were to become the property of Ball at the expiration of the seven years unless Parsons elected to re-lease the property for an additional period of eight years in accordance with the terms of the contract, in which event the houses were not to become the property of Ball until the eight-year period expired.

The contract does not provide in terms for forfeiture of the leased premises, or of the lessee's rights under the lease, in case he fails to keep the houses in proper repair, and as forfeitures are not favored in law, none will be implied. It follows that the lessee's failure to keep the property in proper repair did not justify the lessor's refusal to re-lease the property in accordance with the terms of the contract. On the contrary, if the lessee was under an implied duty to keep the property in repair, a question not now before us, his failure to perform that duty merely furnished the basis of a claim for damages, or of an action for equitable relief.

Having this view of the contract, it results that the lessee was entitled to a renewal or extension of the lease for the eight-year period, if he properly notified the lessor of his purpose to avail himself of the option. Both parties admit that the lessee came to the lessor on January 1, 1923, to see about a renewal of the lease. The lessor concedes that at that time the lessee spoke of leaving the matter to three disinterested parties and that he told the lessee "he was willing to it when he got them houses fixed up." The lessee's version of the affair is: "I asked about reassessing the land, and he said he had thought I had had it long enough." Not only did this conversation take place between the parties, but the lessee, upon the refusal of the lessor to submit the mat-

ter of rent to three disinterested parties, tendered to him the amount of rent which he had theretofore been paying. One cannot read the evidence without being persuaded that the lessor was fully informed of the lessee's purpose to re-lease the property, and that the lessee took every step necessary for the protection of his rights. We, therefore, conclude that the lessee is entitled to a lease of the premises for the eight-year period at a reasonable rent, to be fixed by three disinterested men, if parties are unable to agree.

Judgment reversed and cause remanded with directions to enter judgment in conformity with this opinion.