**AMERICAN AIRLINES, INC., Trans World Airlines, Inc., Eastern Air Lines, Inc., Appellants,**

v.

**LOUISVILLE AND JEFFERSON COUNTY AIR BOARD, Appellee.**

No. 13626–13628.

United States Court of Appeals Sixth Circuit.

July 24, 1959.

As Amended on Denial of Rehearing Sept. 18, 1959.

son, Louisville, Ky., of counsel; Wyatt, Grafton & Grafton, Louisville, Ky., on brief, for appellants.

T. Kennedy Helm, Jr., Louisville, Ky., James W. Stites, Louisville, Ky., of counsel; Stites, Wood, Helm & Peabody, Louisville, Ky., on brief, for appellee.

Before MARTIN, Chief Judge, SIMONS, Circuit Judge, and MATHES, District Judge.

MATHES, District Judge.

These joint appeals are from like judgments of the District Court in separate actions for declaratory judgment [28 U.S.C. §§ 2201, 2202], entered upon orders sustaining motions of appellee Air Board for a summary judgment, decreeing that three substantially identical lease agreements covering facilities at the Louisville, Kentucky airport, executed in 1947 between appellee Air Board and appellant Airlines, "terminated and became no longer effective October 31, 1957"; also from like interlocutory orders in each action denying motions of appellant airlines to stay proceedings and order arbitration pursuant to §§ 3 and 4 of the Federal Arbitration statute [9 U.S.C. §§ 3 and 4, 61 Stat. 669 (1947)].

Although other claims to relief are asserted by appellee Air Board as plaintiff in the District Court, they are not the subject of the present appeals, the District Judge having made an "express determination that there is no just reason for delay" and having directed entry of final judgment in each case, as permitted by Rule 54(b) [Fed.R.Civ.P. 54(b)], 28 U.S.C., solely on the Air Board's claim for a declaration that the leases in question had terminated. Appellate jurisdiction as to the summary judgments so entered on only one of the Air Board's multiple claims is invoked under § 1291, and as to the interlocutory orders under § 1292(1), of the Judicial Code. 28 U.S.C. §§ 1291 and 1292(1); see: Shanferoke Coal & Supply Corp. of Delaware v. Westchester Service Corp., 1935, 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583; Hoover Motor Express Co. v. Teamsters, etc., 6 Cir., 1954, 217 F.2d 49, 51.

Arthur W. Grafton, Louisville, Ky., Wilson W. Wyatt and Gordon B. David-

Each of three actions was originally commenced by the filing of a "Petition for a Declaration of Rights" under Kentucky's declaratory relief statute [K.R.S. Chapter 418], in the Chancery Branch of the Jefferson Circuit Court at Louisville in the State of Kentucky, and thereafter removed from the State court upon petitions of appellant airlines under 28 U.S.C. § 1441 on the ground of diversity of citizenship. 28 U.S.C. § 1332; see: 28 U.S.C. § 2201; Skelly Oil Co. v. Phillips Petroleum Co., 1950, 339 U.S. 667, 671–672, 70 S.Ct. 876, 94 L.Ed. 1194. Following removal, the Air Board sought to remand the cases to the State court on the ground that "this declaratory judgment action involves a fundamental question of state policy requiring interpretation of a Kentucky statute which can be fully determined in the State Courts", but the motions to remand were overruled by the District Court.

Appellant airlines then made their answers to the Air Board's petition, with a counterclaim in each case seeking not only a declaration of rights, but also coercive relief by way of specific performance of the renewal provisions of the lease agreements in question. Appellee Air Board thereupon moved in each case for a summary judgment declaring that "the airport agreement terminated on October 31, 1957", and appellant airlines moved to stay the proceedings and compel arbitration. It is the District Court's "Order and Judgment" granting the former and denying the latter motion in each of the three cases which serves as the basis for these joint appeals.

The facts essential to decision are not in dispute and are fairly set forth in the findings of the District Court, as follows [160 F.Supp. 772]:

"In 1947 each of the Airlines entered into similar lease agreements with the Air Board for the use of facilities at Standiford Field [Louisville airport] at certain agreed rentals for a period of ten years. The leases granted the Airlines an option to renew for a like period, Article II of the leases providing:

"'* * * Lessor hereby grants to Lessee an option to renew this lease for one * * * additional term of ten * * * years * * * provided that Lessee shall notify Lessor in writing of Lessee's exercise of such option as to any such renewal term not less than six * * * months before the expiration of the original term hereof. * * *'

"The Airlines gave the Air Board timely notice of their renewal of their options and the renewals of the options were acknowledged by the Air Board. After the exercise of the options certain negotiations took place between the parties in an attempt to agree upon the rentals for the renewal terms, but the parties were unable to reach an agreement. * * * Article III(C) of the leases provides:

"'* * * In the event Lessee exercises its option to renew this Lease in accordance with the provisions hereof, the rentals, fees and charges for such renewal term shall be as mutually agreed upon between Lessor and Lessee prior to the end of the term. * * * In the event that Lessor and Lessee do not mutually agree as to such rentals, fees and charges for any such renewal term, the same shall be determined by arbitration, as hereinafter provided, and pending such determination the rentals, fees and charges last in effect shall continue in full force and effect.'

"Article XIX of the leases * * * provides as follows:

"'Any controversy or claim arising out of or relating to, the provisions of Article II * * * (and) Article III(C) * * * of this Agreement, which shall not have been settled by agreement between the parties hereto within ninety * * * days after notice of such controversy or claim has been served by the claimant upon the other party, shall be settled by arbitration in accordance with Chapter 417 of Ken-

tucky Revised Statutes and the Commercial Arbitration Rules of Procedure, then obtaining, of the American Arbitration Association * *.'

"Prior to the expiration of the original term of the leases * * * the Air Board gave the Airlines a notice of controversy provided for in Article XIX, but no steps have been taken by the parties to initiate arbitration proceedings, and they have not been able to mutually agree upon rental terms for the renewal period. The original term of the leases having expired on October 31, 1957, the Airlines are now seeking to enforce the arbitration provisions of the leases which the Air Board refuses to acknowledge as binding upon it."

The District Court declared in a memorandum opinion that the arbitration provisions of the leases were invalid and unenforceable because "the Air Board was without authority to contract to delegate to arbitrators its public and discretionary duty to fix rentals for the use of the facilities of the airport." The memorandum opinion concludes: "Having reached the conclusion the arbitration provisions of the leases are unenforceable and void and the Airlines are not entitled to specific performance of the void covenants of their leases, it is not necessary to consider the question of whether or not the establishment of renewal rentals is an arbitrable issue."

The leases were hence declared terminated as of the end of the original ten-year term on October 31, 1957, for lack of agreement by the parties as to an essential provision of the renewal term, namely, the rental fees and other charges to be paid by appellant airlines for facilities at Louisville airport during the forthcoming ten-year period.

Although the leases evidence "a transaction involving commerce among the several states", thus bringing the Federal arbitration statute into play [see 9 U.S.C. §§ 1–14, 61 Stat. 669 (1947)], the validity and enforceability of the renewal provisions, including those as to arbitration, were determined by the District Court in accordance with Kentucky law. On these appeals there is presented at the outset, then, the problem whether Federal or State law governs.

However, it should first be noted that above-quoted Article XIX of the lease agreements declares that "any controversy or claim arising out of or relative to the [arbitration] provisions * * * of this agreement * * * shall be settled by arbitration in accordance with Chapter 417 of [the] Kentucky Revised Statutes * * *." Although Chapter 417 includes provisions as to the validity and enforceability of agreements to arbitrate, appellant airlines in their briefs take the position that Chapter 417 "is merely to govern * * * procedure", and not "validity or enforceability." Moreover, appellee Air Board apparently acquiesces in this interpretation of the contractual language. Hence we need not now confront the interesting question whether parties to an arbitration agreement "evidencing a transaction involving commerce * * * among the several states" [9 U.S.C. §§ 1 and 2] may by mutual agreement waive the benefits of the Federal law insofar as validity and enforceability are concerned, and choose instead State law more to their liking.

■■ The Federal arbitration statute, [9 U.S.C. §§ 1–14, 61 Stat. 669 (1947)], was enacted in exercise of the Congress' plenary power over interstate commerce. U.S.Const. Art. I, § 8, clause 3; 9 U.S.C. §§ 1 and 2; cf. Bernhardt v. Polygraphic Company, 1956, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199; Jackson v. Kentucky River Mills, D.C.E.D.Ky. 1946, 65 F.Supp. 601. Within the scope of the statute circumscribed by the Constitution, Federal law is of course paramount under the Supremacy Clause, and State law must give way. Kentucky River Mills v. Jackson, 6 Cir., 1953, 206 F.2d 111, 117, 47 A.L.R.2d 1331; Jackson v. Kentucky River Mills, supra, 65 F.Supp. at page 603; see Note, "Occupation of the Field" in Commerce Clause Cases 1936–1946: Ten Years of Federalism, 60 Harv.L.Rev. 262 (1946).

██ Federal power to pre-empt being clear, it remains to inquire just how much of the field the Congress intended to and did occupy. Cf. New York Central R. Co. v. Winfield, 1917, 244 U.S. 147, 37 S.Ct. 546, 61 L.Ed. 1045. Section 2 of the Federal arbitration statute, as qualified by § 1, determines the particular controversies to which §§ 3 and 4 of the statute may be applicable. 9 U.S.C. §§ 2, 1, 3, 4; Bernhardt v. Polygraphic Co., supra, 350 U.S. at pages 200–202, 76 S.Ct. at page 275; Local 205, United Electrical, Radio and Machine Workers of America v. General Electric Co., 1 Cir., 1956, 233 F.2d 85, 97, affirmed 1957, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028. So far as relevant here, § 2 provides that:

> "A written provision in any * * contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract * * * or the refusal to perform the whole or any part thereof * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2, 61 Stat. 669 (1947).

While the language just quoted might plausibly be read to support a broader construction, consideration of the legislative history reveals that what the Congress intended was merely to overrule by legislation long-standing judicial precedent, which declared agreements to submit judicable controversies to arbitration contrary to public policy, on the ground that enforcement of such agreements would oust the courts of their jurisdiction. Thus the congressional purpose was to make arbitration agreements within the scope of the Federal statute as effective enforceable as any other contract, and so permit contracting parties thereby to avoid, if they chose so to do, the "delay and expense of litigation." Senate Rep.No. 536, 68th Cong. 1st Sess. (1924); H.R.Rep. No. 96, 68th Cong. 1st. Sess. (1924); and see: Kulukundis Shipping Co., S/A v. Amtorg Trading Corp., 2 Cir., 1942, 126 F.2d 978, 982–984.

██ As to agreements to arbitrate which, although evidencing transactions "involving commerce" [9 U.S.C. §§ 1 and 2], are invalid, revocable or unenforceable under State or Federal law for other reasons, e. g. fraud, lack of consideration or capacity or authority to contract, there appears no indication whatever of congressional intent that such agreements would be made valid, irrevocable and enforceable solely by virtue of the Federal arbitration statute. And it is settled that ambiguous statutory language is not to be so read as to give it a reach beyond congressional intent as revealed *inter alia* by the legislative history, evil to be remedied, and object sought to be achieved. Cf.: People of Puerto Rico v. Shell Co., 1937, 302 U.S. 253, 258, 58 S.Ct. 167, 82 L.Ed. 235; Ozawa v. United States, 1922, 260 U.S. 178, 194, 43 S.Ct. 65, 67 L.Ed. 199; Genessee Trustee Corp. v. Smith, 6 Cir., 1939, 102 F.2d 125, 126.

██ The considerations just stated combine to impel the conclusion that, as to the question at hand, the Federal arbitration statute was intended to declare no more than that agreements to arbitrate "involving commerce" [9 U.S.C. §§ 1 and 2], previously held invalid or revocable or unenforceable for policy reasons apposite to arbitration in particular, such as ousting the courts of jurisdiction, are by virtue of the Federal arbitration statute valid and enforceable, unless by other Federal law or by State law such agreements are for other reasons to be held invalid or revocable or unenforceable.

██ Notwithstanding that under Kentucky law, apart from her arbitration statute [K.R.S. Chapter 417], an agreement otherwise valid and enforceable, which obligates the parties "to arbitrate all of the disputes thereafter to arise thereunder is invalid and unenforceable as constituting an attempt to oust the * * * courts of their jurisdiction and to set up private tribunals" [Gatliff Coal Co. v. Cox, 6 Cir., 1944, 142 F.2d 876, 881; see: Jones v. Jones, 1929, 229 Ky. 71, 16 S.W.2d 503; Continental Insurance Company v. Vallandingham & Gentry, 1903, 116 Ky. 287, 76 S.W. 22],

where as here the contract evidences a transaction "involving commerce" [9 U.S.C. §§ 1 and 2], Kentucky law and policy must yield to paramount Federal law and such an agreement, if otherwise unimpeachable under applicable State and Federal law, is "valid, irrevocable, and enforceable" under the Federal arbitration statute. Kentucky River Mills v. Jackson, supra, 206 F.2d at page 117.

However, the cases at bar are not here because it is the policy of Kentucky, and hence her law, to condemn agreements to submit controversies to arbitration as attempts "to oust * * * the courts of their jurisdiction", since the parties in effect concede that each of the three lease contracts at bar is a "contract evidencing a transaction involving commerce." [9 U.S.C. § 2.] Moreover, by reason of the Federal arbitration statute and the Supremacy Clause of the Federal Constitution, U.S.Const. art. 6, cl. 2, the particular Kentucky law and policy just mentioned cannot *ex proprio vigore* affect the validity of the challenged contractual provisions calling for arbitration. The Air Board's attack upon the validity of its covenant to submit the renewal rentals and fees to arbitration rests instead upon a ground that goes to the very formation of the contract to arbitrate in the first place, namely, the authority of the Air Board as a public body to make such a covenant. And it is clear, from what has been said, that on the question as to whether the covenant to submit to arbitration was *ultra vires* the Air Board's authority, State and not Federal law governs.

▮ Section 2, and hence §§ 3 and 4, of the Federal arbitration statute [9 U.S.C. §§ 2, 3 and 4] require of course that if court action on the contract is to be stayed, or if arbitration is to be compelled, the contract in which the agreement to submit to arbitration appears, as well as the arbitration provisions themselves, must be valid and enforceable in accordance with ordinary contract principles under applicable State and Federal law. Cf.: Kulukundis Shipping Co., S/A v. Amtorg Trading Corp., supra,

126 F.2d at page 986; Goldhill Trading & Shipping Co., S.A. Panama v. Caribbean Shipping Co., D.C.S.D.N.Y.1944, 56 F. Supp. 31. This is plain from the customary import of the language of § 2 itself [cf.: City of Lincoln, Neb. v. Ricketts, 1936, 297 U.S. 373, 376, 56 S.Ct. 507, 80 L.Ed. 724; Magnano Co. v. Hamilton, 1934, 292 U.S. 40, 46–47, 54 S.Ct. 599, 78 L.Ed. 1109], and as well from the assertion in the legislative history that an "arbitration agreement is placed upon the same footing as other contracts * * *." H.R.Rep. No. 96, 68th Cong. 1st Sess. (1924).

The District Court, then, properly looked to the law of Kentucky in deciding whether the arbitration provisions of the leases here in question were invalid and unenforceable because beyond the authority of the Air Board. Its decision that they were is predicated upon the conclusion that, "since the Air Board is a public body engaged in the performance of a public duty, it is subject to all general laws applicable to other political subdivisions and without express statutory permission it is not permitted to delegate and surrender to others its official powers which are discretionary in character and require the exercise of judgment." Having thus concluded that the arbitration provisions in controversy were invalid, the District Court did not find it necessary to reach the issue as to whether the dispute was of such a character as to be arbitrable.

▮ If we assume, as did the District Court, that the arbitration provisions in the leases amounted to a delegation of municipal powers to private persons, authority for such delegation must be found, if at all, in the Kentucky statutes, since the Air Board under Kentucky law is a municipal corporation and as such is an instrumentality or agent of the State possessing, save as may otherwise be conferred by the Kentucky Constitution, only such power or authority as the Kentucky General Assembly by statute has expressly or impliedly granted. City of Middlesboro v. Kentucky Utilities Co., 1940, 284 Ky. 833, 146 S.W.2d 48.

■ Generally speaking, only those powers are implied which are necessary to make effective powers expressly or otherwise impliedly granted [Reconstruction Finance Corp. v. City of Richmond, 1933, 249 Ky. 787, 61 S.W.2d 631; Miller v. City of Georgetown, 1945, 301 Ky. 241, 191 S.W.2d 403], including of course such powers as are essential to the realization of objectives and purposes which the municipality is authorized or duty bound to accomplish [Barrow v. Bradley, 1921, 190 Ky. 480, 227 S.W. 1016, 1017]. Beyond these a Kentucky municipality has no other powers. Louisville & Nashville R. Co. v. City of Hazard, 1947, 304 Ky. 370, 200 S.W.2d 917; see: Bower v. City of Louisville, 1937, 269 Ky. 350, 107 S.W.2d 238; 2 McQuillin on Municipal Corporations § 10.09 at 593 (3rd ed. 1949).

This appears to be true regardless of the capacity, proprietary or governmental, in which the municipality functions. Compare: City of Middlesboro v. Kentucky Utilities Co., supra, 284 Ky. 833, 146 S.W.2d 48, and Dyer v. City of Newport, 1906, 123 Ky. 203, 94 S.W. 25, with cases just cited and with Lowery v. City of Lexington, 1903, 116 Ky. 157, 75 S.W. 202; Roberts v. City of Louisville, 1891, 92 Ky. 95, 17 S.W. 216, 13 L.R.A. 844; Franke v. Paducah Water Supply Co., 1889, 88 Ky. 467, 11 S.W. 432, 718, 4 L.R.A. 265. In any event, where the implied authority of a municipality to delegate discretionary powers is involved, such as the power here to fix rental fees and charges, the Kentucky Court of Appeals has, consistent with the general principles just stated, applied the same rule to attempted delegations by a municipal corporation functioning in a proprietary capacity as to attempted delegations by a municipal corporation functioning in a governmental capacity. Compare: City of Middlesboro v. Kentucky Utilities Co., supra, 284 Ky. 833, 146 S.W.2d 48, and City of Louisville v. Parsons, 1912, 150 Ky. 420, 150 S.W. 498, with County Board of Education of Warren County v. Durham, 1923, 198 Ky. 733, 249 S.W. 1028.

■ So it is that the authority of appellee Air Board to delegate to arbitra-tors the power to fix rental fees and charges for use of the Louisville airport facilities during the ten-year renewal period depends on what is expressed in and what may properly be implied from the statutory language conferring the Air Board's powers. See K.R.S. §§ 183.140–183.220; cf. Board of Councilmen of City of Frankfort v. White, 1928, 224 Ky. 570, 6 S.W.2d 699.

Section 183.150 of Kentucky's Revised Statutes provides that:

"The purpose of the [Air] board shall be to establish and maintain one or more airports and facilities to provide for transportation by air of passengers, property, express, and mail, and to provide one or more airports and facilities for the use of the Federal Government. The [Air] board shall have such powers as may be necessary or desirable to promote aviation and the development of facilities for air travel and transportation." 1944 ch. 138, § 2, eff. June 13, 1944, K.R.S. § 183.150.

While § 183.160 authorizes:

"The [Air] board shall employ necessary counsel, agents, and employes to carry out its work and functions and to prescribe such rules and regulations as it deems necessary." 1948 c. 221, eff. June 17, 1948, K.R.S. § 183.160.

There being no express statutory grant of authority to the Air Board to delegate the power to fix rental fees and charges for the use of airport facilities, the specific question here is whether or not authority to delegate such power to others, such as arbitrators, is impliedly granted because "necessary or desirable" within the meaning of the last sentence of above-quoted § 183.150. [K.R.S. § 183.150.] The cases relied upon by appellant airlines, establishing the constitutionality of delegations by the Kentucky General Assembly to goverment bodies, [see e. g.: Spahn v. Stewart, 1932, 268 Ky. 97, 103 S.W.2d 651, and Estes v. State Highway Commission, 1930, 235 Ky. 86, 29 S.W.2d 583], are hence beside the mark here, where the existence of statutory authority for a delegation of power

to private persons by a state agency, itself the creature of statute, is involved. See: 2 McQuillin on Municipal Corporations, supra, § 10.18 at 623.

The Kentucky Court of Appeals has often held that it will not be inferred, absent expressly permissive statutory language, that a municipal corporation has authority to delegate to private persons, or even to other government bodies, discretionary powers conferred expressly or impliedly by the General Assembly, observing that to uphold such a delegation would permit evasion of responsibility specifically imposed on the public body and thereby the public would be deprived of the collective judgment of those directly or indirectly responsible to the public. See e. g.: Board of Park Commissioners of Ashland v. Shanklin, 1947, 304 Ky. 43, 199 S.W.2d 721; Booth v. City of Owensboro, 1938, 274 Ky. 325, 118 S.W.2d 684; Board of Park Commissioners of City of Louisville v. Speed, 1926, 215 Ky. 319, 285 S.W. 212; J. I. Case Threshing Machine Co. v. Commonwealth, 1917, 177 Ky. 454, 197 S.W. 940; Jameison v. City of Paducah, 1922, 195 Ky. 71, 241 S.W. 327; Floyd County v. Owego Bridge Co., 1911, 143 Ky. 693, 137 S.W. 237; City of Bowling Green v. Gaines, 1906, 123 Ky. 562, 96 S.W. 852.

On the other hand, that Court has on occasion found implied statutory authority justifying a municipality's delegation of broad discretionary powers to private persons. See City of Mayfield v. Phipps, 1927, 203 Ky. 532, 263 S.W. 37; cf. Poggel v. Louisville R. Co., 1928, 225 Ky. 784, 10 S.W.2d 305. Thus we find it impossible to say, as appellee Air Board urges, that Kentucky has an invariable rule against implied delegation of discretionary powers. Compare, particularly, City of Mayfield v. Phipps, supra, 203 Ky. 532, 263 S.W. 37, with City of Louisville v. Parsons, supra, 150 Ky. 420, 150 S.W. 498.

The position taken *ex adverso* by appellant airlines, in reliance on City of Mayfield v. Phipps, that delegations of administrative or ministerial powers are permissible, while delegations of legislative powers are not, is similarly untenable. More than once the Kentucky Court of Appeals has invalidated attempted delegations of what were clearly administrative powers. See e. g.: County Board of Education of Warren County v. Durham, supra, 198 Ky. 733, 249 S.W. 1028; J. I. Case Threshing Machine Co. v. Commonwealth, supra, 177 Ky. 454, 197 S.W. 940; City of Louisville v. Parsons, supra, 150 Ky. 420, 150 S.W. 498. And in no case found or brought to our attention has that Court unequivocally stated that all delegations of legislative power are invalid. See e. g.: City of Mayfield v. Phipps, supra, 203 Ky. 532, 263 S.W. 37; Poggel v. Louisville R. Co., supra, 225 Ky. 784, 10 S.W.2d 305. Nor have we found a case in which an attempted delegation of public power to private persons by a Kentucky municipality has been invalidated solely on such a ground.

Although the Kentucky decisions fail to provide definitive guidance in the form of a clear-cut rule, study of the opinions of the Court of Appeals of Kentucky leads to the view that the rule most in accord with the actual holdings of that Court is that, in the absence of express statutory language so authorizing, a municipal corporation of Kentucky has no authority to delegate to others discretionary powers either expressly or impliedly conferred, unless the facts are such, as in the Poggel and City of Mayfield cases just cited, that delegation is necessary either to realization of objectives which the municipality is authorized or duty bound to accomplish, or to effective exercise of powers otherwise expressly or impliedly conferred.

The difficulties involved in applying the rule just stated to the cases at bar are twofold. First, the Kentucky courts have never said that this is the Kentucky rule. And since interpretation and reconciliation of judicial decisions involves surely as much art as science, the result of our effort to distinguish may well not commend itself to the Kentucky courts. The second obstacle lies in the fact that none of the Kentucky cases found involved a statute, such as that at bar, which ex-

pressly confers upon a municipal corporation such as appellee Air Board not only those powers "necessary", but also those powers "desirable." See K.R.S. § 183.-150.

The Kentucky Court of Appeals has admonished that, in determining the scope of the power of a municipal corporation, primary regard must be had for the language of the particular statutory grant. Board of Councilmen of City of Frankfort v. White, supra, 224 Ky. 570, 6 S.W.2d 699; cf.: City of Middlesboro v. Kentucky Utilities Co., supra, 284 Ky. 833, 146 S.W.2d 48; City of Mayfield v. Phipps, supra, 203 Ky. 532, 263 S.W. 37. Hence to hinge decision on what may appear to be "necessary" without determining and weighing what may be "desirable" within the meaning of K.R.S. § 183.150, would make nugatory a vital part of the applicable statutory language. This we should not do, and cannot do consistently with the Kentucky cases.

There being no explicit or implicit rule which is consistent with the holdings of the Kentucky cases and apposite to the statutory language here in question, the most that can be said is that the relevant Kentucky law is uncertain as applied to the facts at bar. So any decision by this Court as to the validity of a delegation of discretionary power by appellee Air Board must at best be but a tentative forecast of what a Kentucky court might do, and not a determination of what it would do. Cf. Railroad Commission of Texas v. Pullman Co., 1941, 312 U.S. 496, 499–500, 61 S.Ct. 643, 85 L.Ed. 971, but see Poggel v. Louisville R. Co., supra, 225 Ky. 784, 10 S.W.2d 305.

What has been said up to this point assumes, as did the District Court, that decision as to validity of the agreements to arbitrate must turn on the extent of the Air Board's authority to delegate to arbitrators the power to fix rental fees and charges for the ten-year renewal period. But if the dispute at bar is a justiciable controversy under Kentucky law, i.e. of such a nature that a Kentucky court of equity would adjudicate the renewal rental fees and charges, then the inquiry suggests itself whether the Air Board's covenant to submit to arbitration might not amount to a delegation of power at all, but only to an agreement to permit arbitrators to decide a justiciable controversy as to future rates which otherwise would be decided by a Kentucky court of equity in any event, and not by the Air Board.

It has often been observed that arbitration is but a substitute for court action, and hence that before a dispute can be arbitrable, it must first be judicable or justiciable. See: e. g.: Murray Oil Products Co., Inc. v. Mitsui & Co., 2 Cir., 1944, 146 F.2d 381; Kentucky River Mills v. Jackson, supra, 6 Cir., 206 F.2d 111; Boston Printing Pressmen's Union No. 67 v. Potter Press, D.C.D.Mass.1957, 141 F.Supp. 553, affirmed 1 Cir., 1957, 241 F.2d 787; 6 Corbin, Contracts § 1442 at 755 (1951); but see: State, by Van Riper v. Traffic Telephone Workers' Federation of New Jersey, 1949, 2 N.J. 335, 66 A.2d 616, 9 A.L.R.2d 854; 6 Williston Contracts §§ 1918 and 1919 (Rev. ed. 1938). Some courts, however, take a broader view and, absent a controlling statute requiring otherwise, regard as also arbitrable a class of controversies, indefinite in scope, which could not be made the subject of a court action and so are not justiciable. See, e. g.: Milhollin v. Milhollin, 1919, 71 Ind.App. 477, 125 N.E. 217; Findly v. Ray, 1857, 50 N.C. 125; Houston Saengerbund v. Dunn, 1906, 41 Tex.Civ.App. 376, 92 S.W. 429; cf. Isaacs, Two Views of Commercial Arbitration, 40 Harv.L.Rev. 929 (1927).

On the other hand, present-day arbitration acts such as the Kentucky statute [K.R.S. Chapter 417], which normally do not replace but rather supplement common law rules, usually though not always expressly require justiciability. See: Miller v. Plumbers Supply Co., 1939, 275 Ky. 647, 122 S.W.2d 477; Sturges, Commercial Arbitration and Awards § 60 (1930); Phillips, Rule of Law or Laissez Faire in Commercial Arbitration, 47 Harv.L.Rev. 590, 592–594 (1934).

Assuming then, *arguendo*, that the dispute at bar as to renewal rental fees and charges is not justiciable under Kentucky

law, but that Kentucky recognizes a common law rule broad enough to treat such a dispute as nonetheless arbitrable, the arbitrators would be called upon here to exercise powers conferred, and to perform duties imposed upon appellee Air Board, and thus a plain delegation of municipal powers would be involved. If *per contra* the controversy at bar is justiciable, and arbitration hence serves as a chosen substitute for court action, it is equally plain that a question as to permissible delegation of municipal powers is not here raised.

Given a controversy that is justiciable, the power to resolve the issues involved would lie not with the municipality, but with the courts; and the question of course would be, not whether the municipal corporation has authority to delegate power which it would otherwise exercise itself, but whether the municipality has authority to covenant that private arbitrators, and not the courts, will decide the issues in dispute. In short, where the dispute is justiciable, choice of tribunal, and not delegation of power, is the desideratum. If, then, covenants to arbitrate aside, a Kentucky court of equity would fix and enforce "reasonable" rental fees and charges for use of Louisville's airport facilities during the ten-year renewal period in question, the controversy as to such future fees and charges is justiciable and, under the Kentucky cases as we read them, the Air Board had at least prima facie authority to agree to submit the controversy for decision by a board of arbitrators rather than a court.

In this connection it is significant that, with one possible exception, the Kentucky courts apparently have never treated the validity or invalidity of arbitration agreements entered into by a municipal corporation as involving a question of delegation of municipal powers. See: Watkins, Consulting Engineers v. Department of Highways, Ky.1956, 290 S.W.2d 28; Carter v. Krueger & Son, 1917, 175 Ky. 399, 194 S.W. 553; Simrall v. City of Covington, 1895, 29 S.W. 880, 16 Ky.Law Rep. 770; Remington & Co. v. Harrison County Court, 1876, 12 Bush

148, 75 Ky. 148, and see West v. Coos County, 1925, 115 Or. 409, 237 P. 961, 40 A.L.R. 1362; but see Poggel v. Louisville Railroad Co., supra, 225 Ky. 784, 10 S.W.2d 305. Only in the Poggel case last cited was the issue even mentioned and, while not altogether clear from the terse report on the point, it would seem that the disputes there held subject to arbitration were in all likelihood not justiciable.

As to whether the controversy at bar over the renewal rental is justiciable, although some Kentucky decisions "seem to lean toward the view that such provisions are enforceable", the specific enforceability in a Kentucky court of equity of "a renewal covenant in a lease, which leaves the renewal rental to be fixed by future agreement between the parties" without provision for arbitration, has not as yet been determined. Edwards v. Bernstein, 1931, 238 Ky. 38, 36 S.W.2d 662, 663. And authority in jurisdictions other than Kentucky is not unanimous. See: I Williston, Contracts, § 45 at 151–152 (3rd ed. 1957); 5 Corbin, Contracts, § 1174 at 761–762 (1951). But where as here a lease not only provides that the parties shall mutually agree upon the renewal rent, but also provides that upon failure to agree the dispute shall be submitted to arbitration, the State decisions appear to be almost unanimously to the effect that the renewal provisions will be held valid and specifically enforceable, with a court of equity fixing "reasonable" rent for the renewal term in cases where arbitration is for any reason unavailable. See, *inter alia*: 5 Corbin, Contracts, § 1173 at 754–755 (1952); 167 A.L.R. 727, 763–768 (1947); 166 A.L.R. 1237, 1245–1246 (1947); 68 A.L.R. 157, 159–161 (1930); Hall v. Weatherford, 1938, 32 Ariz. 370, 259 P. 282, 56 A.L.R. 903; 30 A.L.R. 572, 580–586 (1924); cf. 26 A.L.R.2d 744, 746, 748 (1952).

Moreover, the Kentucky Court of Appeals has held, in an action for "determination of the rights", that the lessee in a case such as that just stated is "entitled to a lease of the premises * * * [for the renewal] period at a reasonable rent, to be fixed by three disinterested

men, if the parties are unable to agree." Parsons v. Ball, 1924, 205 Ky. 793, 266 S.W. 649, 650. Although in Parsons v. Ball the court was not requested to decree specific performance of the renewal provisions in dispute, the opinion gives every indication that it would have done so had the parties requested.

■ Placing ourselves now as best we can in the position of a Kentucky court, as must be done in diversity cases [cf. Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079], the opinion in Parsons v. Ball, supra, 205 Ky. 793, 266 S.W. 649, and the weight of authority of other jurisdictions, lead us to the conclusion that, as a general rule, where an ordinary lease includes a provision for renewal, with the rental to be determined either by mutual agreement of the parties or by decision of arbitrators, such a renewal provision would likely be held valid under Kentucky law and enforceable by a Kentucky court of equity, with the court itself fixing a "reasonable" rental for the renewal period in cases where the parties are for any cause unable or unwilling to submit the dispute to arbitration under Kentucky law.

■ Turning now to the particulars of the agreements at bar, upon notice of renewal by appellant airlines in accordance with the terms of the leases, the renewal options were effectively exercised, and thereby both the Air Board and appellant airlines became bound under Kentucky law for a new ten-year term, subject to subsequent determination of the rental fees and charges to be charged during the renewal period. Parsons v. Ball, supra, 205 Ky. 793, 266 S.W. 649; cf.: Khourie Bros. v. Jonakin, 1927, 222 Ky. 277, 300 S.W. 612; Raff v. Freiberg, 1925, 207 Ky. 246, 268 S.W. 1110. Accordingly, the broad declaration of the District Court that the leases became fully "terminated and no longer effective October 31, 1957", must be held erroneous. The lease in Allen v. Whitely, 1925, 209 Ky. 234, 272 S.W. 724, wherein a new term was not to be created upon notice of intention to renew, but only after actual fixing of the rental fee for the renewal period, is thus distinguishable from the leases at bar; for there the lease for the renewal term never came into being, inasmuch as the renewal rent was never fixed.

Even though the parties at bar are bound under Kentucky law for a new ten-year term, the question still remains whether under the particular circumstances here a Kentucky court of equity would and, even if so, whether a Federal court of equity should, fix the rental charges for the new term. While it is our view that the Kentucky Court of Appeals would as a general rule conclude as we have stated, the circumstances at bar are both peculiar and substantially different from those of any case we have found and give rise to considerations which, it seems to us, would operate to take the cases here outside the purview of the general rule.

■ Among these circumstances is the fact, to be judicially noticed as a matter of common knowledge, that the air transportation industry has been nurtured and brought to its present position of eminence in no mean part by continuing direct or indirect government subsidy. Cf. Report on Airlines of the Antitrust Subcommittee of the Committee on the Judiciary, House of Representatives, 85th Cong., 1st Sess., at 16–17, 265–267 (1946); see: Locklin, Economics of Transportation, at 792–795, 807–811, 842–843 (3rd ed.1951); Nicholson, Air Transportation Management, at 112–127 (1951); but see Smith, Government Policy Concerning Airline Subsidy, 25 Journal of Air Law and Commerce 79 (1958). Commonplace also is the added circumstance that what was once a dependent infant has shown ever-increasing ability to stand alone, unaided by further government support. Whether the carriers by air have today reached the point where they should be treated as economically self-sufficient in all respects remains, however, a subject of controversy. See: President's Memorandum of Disapproval of Senate Bill No. 3502, September 2, 1958; Ireland, Airport Problems

of the Airlines, 23 Journal of Air Law and Commerce 11, 13 (1956).

In keeping with the long-standing general policy of government encouragement, the Kentucky General Assembly has not only conferred upon appellee Air Board "such powers as may be necessary or desirable to promote aviation and the development of facilities for air travel and transportation" [K.R.S. § 183.150], but has also provided that under appropriate circumstances the public purse as well as the public credit may be resorted to in aid of the objectives to be accomplished. See K.R.S. §§ 183.190, 183.200, 183.205. Acting under the authority thus conferred and consistent with the statutory objectives to be achieved, appellee Air Board, in contracting with appellant airlines for lease of the Louisville airport facilities during the original ten-year lease period, agreed to rates alleged to be non-compensatory. Losses sustained as a result of non-compensatory rates charged any user of the field presumably must be recouped either out of higher charges to other users or out of the public purse.

The record discloses that one of the principal issues now dividing the parties here is the continuance to one extent or another of the present low rates. Appellee Air Board points out that future rates must necessarily "hinge upon basic decisions in economics, airport management, and public policy * * * [and] will affect not only the airlines who are a party to this suit, but all other users of the field, whether airlines, private operators, concessionaires, or the public"; and especially so since appellant airlines are "the largest single group of users of the field." See: Rhyne, Airport Lease and Concession Agreements, at 30–37 (1948); Lindholm, Public Finance of Air Transportation, at 34–35 (1948); Nelson, Airport Development and Operation Expenses, 24 Journal of Air Law and Commerce 49, 73–82 (1957). Thus it is that whoever determines the rates for future use of Louisville airport by appellant airlines will be forced not only to reconcile the competing interests of the various groups involved, but also to resolve broad issues as to present and future public policy of Kentucky.

To the foregoing considerations, which in our view place the cases at bar outside the general rule, should be added the fact that no Kentucky decision has come to our attention involving a lease wherein the fixing of renewal rental required to any appreciable degree the determination of public policy or the weighing of political and economic factors comparable to those already noted here. Neither is the situation presented at bar one where, by standard or formula, the underlying issues of public policy have been resolved, leaving only the problem of judicial application of the standard or formula to the facts at hand. Cf. Parks v. Cleveland R. Co., 1930, 38 Ohio App. 315, 176 N.E. 472, affirmed 1931, 124 Ohio St. 79, 177 N.E. 28.

█ So we confront the precise question whether a Kentucky court of equity would specifically enforce renewal provisions of a lease such as those here by fixing a "reasonable" future rental itself, where in so doing it would of necessity be required to resolve broad issues of public policy, present and future. It is well established in Kentucky, that, assuming municipal authorities have acted within the limits of their constitutional or statutory or charter authority, the courts will not ordinarily interfere with the exercise of discretionary powers, particularly those involving, as here, considerations of necessity and desirability. Kentucky Utilities Co. v. City of Paris, 1934, 256 Ky. 226, 75 S.W.2d 1082; City of Middlesboro v. Byrd, 1933, 247 Ky. 348, 57 S.W.2d 49; see McQuillin, Municipal Corporations § 10.33 (3rd ed. 1949). This general policy of judicial non-intervention appears to be predicated on the theory that under the Kentucky constitutional system of divided powers it is the function of the courts to assure adherence to the law embodied in constitution or statute or charter as the case may be, and it would be a usurpation of executive or legislative powers for the courts to attempt the additional function of de-

824

termining the necessity or desirability of admittedly lawful policies or activities, since these are matters best decided by executive or legislative officials subject to greater practical control by and hence presumably more cognizant of the needs and desires of the people, than are judges by design removed from the partisan political arena and insulated to the extent practicable from the influence of popular sentiment. Gathright v. H. M. Byllesby & Co., 1913, 154 Ky. 106, 157 S.W. 45; Town of LaGrange v. Overstreet, 1910, 141 Ky. 43, 132 S.W. 169, 31 L.R.A.,N.S., 951; Henderson v. City of Lexington, 1908, 132 Ky. 390, 111 S.W. 318, 22 L.R.A.,N.S., 20.

While the Kentucky cases espousing these principles are on their facts distinguishable, the underlying rationale and general policy must be reckoned with in the cases at bar. For a court of equity to fix rental fees and charges for the ten-year-renewal period of the airport leases would require judicial determination of the necessity, or lack of it, for public-backed financial support, as well as the wisdom or desirability of embarking upon such a task in the first place. The court would of necessity, then, have to resolve issues of State public policy, present and future, in which the needs and desires of the citizenry of Kentucky in general, and those of the City of Louisville and County of Jefferson in particular, would be a major if not primary consideration. This the Kentucky decisions indicate, for reasons already noted, a Kentucky court of equity probably would not do. But again there is no Kentucky case in point, no sure guide to Kentucky law in this realm of imponderable State policy.

Since unsettled State law turning on unsettled State policy leaves doubt as to whether the dispute as to future rental fees and charges for the ten-year-renewal period of the airport leases presents a justiciable controversy under the law of Kentucky, it is a fortiori uncertain whether the Kentucky courts would hold the dispute to be arbitrable under Kentucky law, bearing in mind that arbitrators would be compelled to face the problems of public policy to which we have adverted. Moreover, this doubt as to justiciability, and hence as to arbitrability under Kentucky law, leaves in turn continued uncertainty as to whether an attempted delegation of appellee Air Board's power to determine what is "necessary or desirable" [K.R.S. § 183.-150] is here in issue at all and, if so, whether such a delegation would be valid under Kentucky law, as previously discussed.

This uncertain state of the Kentucky law in an area ruled by State policy presses upon us the question whether a Federal court should in any event attempt a declaration of the rights of the parties under the circumstances at bar.

In enacting the Declaratory Judgments Act [28 U.S.C. §§ 2201, 2202], "Congress enlarged the range of remedies available in the federal courts", but did not alter or in any way modify their jurisdiction. Skelly Oil Co. v. Phillips Petroleum Co., supra, 339 U.S. at pages 671–672, 70 S.Ct. at page 879, 94 L.Ed. 1194; cf. Aetna Life Insurance Co. of Hartford, Conn. v. Haworth, 1937, 300 U.S. 227, 239–241, 57 S.Ct. 461, 81 L.Ed. 617; see Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 1937, 92 F.2d 321, 323–324. The remedy afforded being equitable in form, its availability depends on the court's discretion, and not on any fixed right of the litigant. See: Great Lakes Dredge & Dock Co. v. Huffman, 1943, 319 U.S. 293, 300–301, 63 S.Ct. 1070, 87 L.Ed. 1407; Public Service Commission of Utah v. Wycoff Co., 1952, 344 U.S. 237, 241, 243, 73 S.Ct. 236, 97 L.Ed. 291. The criteria which should govern exercise of judicial discretion in granting or withholding declaratory relief have not been comprehensively enumerated, but have been left to be worked out case by case on the basis of sound reason. Brillhart v. Excess Insurance Co., 1942, 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620; Dominion Electrical Mfg. Co. v. Edwin L. Wiegand Co., 6. Cir., 1942, 126 F.2d 172; E. W. Bliss Co..

v. Cold Metal Process Co., 6 Cir., 1939, 102 F.2d 105, 109.

However, it has been declared that "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest" [Eccles v. Peoples Bank, 1948, 333 U.S. 426, 431, 68 S.Ct. 641, 644, 92 L.Ed. 784], and that "It is in the public interest that federal courts of equity should exercise their discretionary power to grant or withhold relief so as to avoid needless obstruction of the domestic policy of the states." Great Lakes Dredge & Dock Co. v. Huffman, supra, 319 U.S. at page 298, 63 S.Ct. at page 1073; see: Public Service Commission of Utah v. Wycoff Co., 344 U.S. at pages 243–244, 73 S.Ct. at page 240; City of Chicago v. Fieldcrest Dairies, 1942, 316 U.S. 168, 171–173, 62 S.Ct. 986, 86 L.Ed. 1355.

For analogous reasons, Federal equity jurisdiction of non-declaratory relief actions has been disavowed on occasion. See: Alabama Public Service Commission v. Southern Ry. Co., 1941, 341 U.S. 341, 349–351, 71 S.Ct. 762, 95 L.Ed. 1002; Burford v. Sun Oil Co., 1943, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424; Penn General Cas. Co. v. Commonwealth of Pennsylvania, 1935, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850; Commonwealth of Pennsylvania v. Williams, 1935, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841.

Moreover, in a recent case where controlling State law was not only uncertain but also involved determination of unsettled State policy, this Court observed that "federal courts should exercise their discretionary power with the proper regard for the rightful independence of state governments in carrying out their domestic policy", and that strong consideration should be given to manifest "public interest * * * in the avoidance of needless friction with state policies", almost certain to result from conflicting interpretation of State laws by the Federal courts. Walker v. Felmont Oil Corporation, 6 Cir., 1957, 240 F.2d 912, 916.

On like grounds the Supreme Court has but recently found the necessity of resolving issues involving unsettled public law or State policy to warrant abstention in the exercise of Federal jurisdiction until the State law or State policy issues, as the case may be, have been settled. Louisiana Power & Light Co. v. City of Thibodaux, 1959, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058.

While the granting of declaratory relief in the case at bar would not require judicial determination of the rental fees and charges for use of the Louisville Airport over the next ten years, it would require the Federal court to choose who shall fix the State policy involved in deciding, for example, whether the rental fees and charges are to be compensatory or non-compensatory and, if the latter, to what extent, remembering that if non-compensatory fees or charges be adopted, then other users of the airport facilities or the public purse or credit must make up the difference. So it is that the question as to just who—judge, arbitrator, or Air Board—is to make these decisions itself entails the fixing of State policy involving, on the one hand the permissibility of such determination by private persons and, on the other hand, the proper role of the Kentucky courts of equity in the Kentucky constitutional scheme of divided governmental powers.

Additionally, the fact that other now unforeseen questions of Kentucky public policy are likely to arise from conflicting interpretations of Kentucky law, should a Federal court undertake to grant a declaratory judgment and incidental relief, strongly suggests that here the discretion conferred by the Declaratory Judgment Act be exercised to withhold such relief in the Federal courts. Especially so, since we were wisely admonished in another era that ordinarily "public policy is a very unruly horse, and when once you get astride it you never know where it will carry you." Richardson v. Mellish, 2 Bing. 294, 303 (1825); see 5 Williston, Contracts § 1629 at 4555 (1937).

Fully recognizing "that the difficulties of ascertaining what the state courts may

hereafter determine the state law to be do not in themselves afford a sufficient ground for a federal court to decline to exercise its jurisdiction" [Meredith v. City of Winter Haven, 1943, 320 U.S. 228, 234, 64 S.Ct. 7, 11, 88 L.Ed. 9], we must recognize too that in all events a declaration by the Federal court as to what the applicable Kentucky law may be "cannot escape being a forecast rather than a determination." Railroad Commission of Texas v. Pullman Co., supra, 312 U.S. at page 499, 61 S.Ct. at page 645, 85 L.Ed. 971. And inasmuch as the factor of uncertain state policy must here be added to that of uncertain state law, we are of opinion that proper regard for the rightful independence of Kentucky in carrying out her domestic policy, and the public interest in avoidance of needless friction with Kentucky policy, combine to argue the wisdom of leaving to the Kentucky courts determination as to whether appellee Air Board has authority, under the circumstances at bar, to provide that arbitrators may fix future rental fees and charges for use of airport facilities. Louisiana Power & Light Co. v. City of Thibodaux, supra, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058, cf. County of Allegheny v. Frank Mashuda Co., 1959, 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163.

Thus we avoid placing the Federal courts in the position of making tentative answers to questions of Kentucky law, answers which may be displaced tomorrow by a decision of the Court of Appeals of Kentucky. As the Court pointed out in City of Thibodaux, supra: "The consequence of allowing this to come to pass would be that this case would be the only case in which the [Kentucky] statute is construed as we would construe it, whereas the rights of all other litigants would be thereafter governed by a decision of the [Court of Appeals of Kentucky] quite different from ours." 360 U.S. at page 30, 79 S.Ct. at page 1073.

"The reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court." Railroad Commission of Texas v. Pullman Co., supra,

312 U.S. at page 500, 61 S.Ct. at page 645; and see Cardozo, The Nature of the Judicial Process, 33–34 (1921).

If we could be certain that, in the event appellee Air Board's covenant to submit to arbitration is held valid under Kentucky law, the Kentucky courts would make the same ruling as to arbitrability and enforceability as would the Federal courts under the Federal arbitration statute, then sound judicial administration might well prompt a direction to the District Court to remand the cases to the State court as "improvidently" removed within the meaning of 28 U.S.C. § 1447 (c) [cf.: Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc., D.C.E.D.N.Y. 1955, 131 F.Supp. 262, 263; Bryan v. United States, 1950, 338 U.S. 552, 554–559, 70 S.Ct. 317, 94 L.Ed. 335], notwithstanding absence of any appeal from the order refusing remand [Chicago, Burlington & Quincy Railroad Co. v. Willard, 1916, 220 U.S. 413, 419–421, 31 S.Ct. 460, 55 L.Ed. 521; Venner v. New York Central Railroad Co., 6 Cir., 1923, 293 F.2d 373]. But we must reckon with the possibility that the Kentucky courts may hold that the dispute at bar is not justiciable and so not arbitrable, while the Federal courts might decide, if and when they reached the question, that the dispute here is arbitrable under the Federal arbitration statute, even though not justiciable. Cf. Boston Printing Pressmen's Union No. 67 v. Potter Press, supra, D.C., 141 F.Supp. 553.

Accordingly, in order to assure a possible benefit of substance depending on retention of Federal diversity jurisdiction [cf. Meredith v. City of Winter Haven, supra, 320 U.S. at page 234, 64 S.Ct. at page 10], it will be necessary for the District Court to retain the cases, stay proceedings therein, and defer or abstain from future exercise of Federal jurisdiction, until further order of the District Court, pending determination by the Kentucky courts of the questions of Kentucky law which we have discussed; all provided of course the parties move diligently for a declaratory judgment or other relief as to these questions in the

Kentucky courts [Louisiana Power & Light Co. v. City of Thibodaux, supra, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058; City of Chicago v. Fieldcrest Dairies, supra, 316 U.S. at pages 171–173, 62 S.Ct. at pages 987–988; cf. Spector Motor Service v. McLaughlin, 1944, 323 U.S. 101, 105–106, 65 S.Ct. 152, 89 L.Ed. 101].

We are not unmindful of the delay, inconvenience and cost attendant upon our conclusion that proper exercise of discretion requires the Federal courts to withhold, at least temporarily, the declaratory relief sought in the cases at bar and remit the parties to the Kentucky courts for a determination of uncertain questions of Kentucky law and policy, but such considerations cannot require a different procedure in view of the "much larger issue as to the appropriate relationship between federal and state authorities functioning as a harmonious whole." City of Chicago v. Fieldcrest Dairies, supra, 316 U.S. at pages 172–173, 62 S. Ct. at page 988.

Inasmuch as the summary declaratory judgments and the interlocutory orders appealed from are to be set aside [28 U.S.C. § 2106], it is unnecessary to reach the further questions posed by appellant airlines as to whether, if appellee Air Board's covenant to submit to arbitration is valid under Kentucky law, the pending actions should be stayed in the District Court and arbitration compelled by mandatory injunction by virtue of §§ 3 and 4 of the Federal arbitration statute [see Boston Printing Pressmen's Union No. 67 v. Potter Press, supra, 141 F.Supp. 553] and, if not, whether the District Court, in the exercise of Federal equity jurisdiction, should nonetheless specifically enforce the renewal provisions of the airport leases and itself fix "reasonable" fees and charges for the ten-year renewal period [see Central Kentucky Natural Gas Co. v. Railroad Commission of Kentucky, supra, 1933, 290 U.S. 264, 270–273, 54 S.Ct. 154, 78 L.Ed. 307].

For the reasons stated, the summary judgments declaring that the airport leases terminated on October 31, 1957, and the interlocutory orders of April 22, 1958, denying a prohibitory injunction staying the proceedings in the District Court and refusing a mandatory injunction to compel arbitration, in each of the three cases, will be set aside, and the cases remanded to the District Court for further proceedings not inconsistent with this opinion.