GLOBAL MARITIME LEASING PANA-
MA, INC., Plaintiff,

v.

M/S NORTH BREEZE, her engines,
tackle, apparel and furniture,
in rem,

and

North Breeze Navigation Co. Ltd.
of Hong Kong, in personam,
Defendants.

PERACO CHARTERING CORPORA-
TION, Plaintiff,

v.

NORTH BREEZE NAVIGATION CO.
LTD., Defendant.

Civ. A. Nos. 4457, 4459.

United States District Court,
D. Rhode Island.

Aug. 18, 1972.

George M. Vetter, Jr., of Hinckley, Allen, Salisbury & Parsons, Providence, R. I., Donald F. Mooney, New York City, of counsel, for plaintiffs.

John Gorham, of Gorham & Gorham, Providence, R. I., Sheldon A. Vogel, of Bigham, Englar, Jones & Houston, New York City, of counsel, for defendants.

## OPINION

DAY, District Judge.

These are related actions arising out of an alleged (unfulfilled) charter party of the F/S North Breeze by her owner, the defendant, North Breeze Navigation Co. Ltd of Hong Kong (hereinafter called "North Breeze") to the plaintiff Global Maritime Leasing Panama, Inc. (hereinafter called "Global"), a corporation incorporated under the laws of the Republic of Panama with a place of business there. In C.A. No. 4457 the plaintiff, invoking the admiralty and maritime jurisdiction of this court, seeks to recover damages for the breach of said alleged charter party.

In C.A. 4459 Peraco Chartering Corporation (hereinafter "Peraco"), a corporation organized under the laws of the State of New York and having its principal place of business in the State of New York, invoking the diversity jurisdiction of this Court, seeks to recover from North Breeze the amount of commissions alleged to be due and owing to it for negotiating said alleged charter party and guaranteeing Global's performance under said charter party.

These actions are now before me upon six (6) motions filed by the parties. These motions are as follows: in C.A. 4457, (1) the defendant's motion to compel arbitration of the claim asserted by the plaintiff against it in said action and to stay all proceedings in said C.A. 4457 and in said C.A. 4459 until said arbitration is completed, (2) the defendant's motion to vacate the writ of arrest of said M/S North Breeze caused to be made by the plaintiff, (3) plaintiff's motion for partial summary judgment in its favor. In C.A. No. 4459 said motions are (1) the defendant's motion to vacate the plaintiff's attachment of the M/S North Breeze, (2) the defendant's motion to stay all proceedings therein

pending the arbitration of the claims involved in C.A. No. 4457, and (3) the plaintiff's motion for the entry of summary judgment in its favor.

In support of their respective motions the parties have filed numerous affidadavits. Attached to one of these affidavits filed by the defendant is a complete set of copies of the ninety-nine (99) telexes, so-called, which reflect the communications and negotiations between Peraco, Global's broker, and John Manners, Kabushiki Kaisha of Tokyo (hereinafter Manners) the defendant's broker, concerning the fixture of a charter party (i. e. the making of a contract to rent the vessel) of the M/S North Breeze by her owner, North Breeze. These negotiations began in late July 1969 and continued until September 29, 1969. Toward the end of said negotiations differences developed between the brokers for the parties as to what security Global would furnish to insure its payment of the hire for said charter party. North Breeze apparently wanted a cash security deposit but on August 6, 1969, in telex, In 12, Peraco strongly urged North Breeze to accept a letter of credit. Manners replied by telex that it was willing to accept a letter of credit but that it also wanted Peraco to guarantee that Global would fulfil its commitments under said charter. On August 12, 1969, Peraco, as agent for Global, in telex, In 17, wired Manners that Global would establish a letter of credit for three (3) months' hire with the Bank of Tokyo and would have the latter confirm said letter of credit. On August 13, 1969, Peraco in telex, In 18, promised a preliminary letter from said bank that said letter of credit would be opened and confirmation of said letter of credit forwarded to the defendant by August 21st or August 22nd. Apparently these letters were never sent to the defendant. After this date, until September 1, 1969, the telexes between Peraco and Manners concerned the specific terms of the proposed charter, the commission Peraco would receive as guarantor of the charter party and the terms of the letter of credit. In these telexes it was stated that the letter of credit must be opened not later than October 5, 1969. On September 8, 1969, in In 33, Peraco stated in part:

"Peraco will guarantee to undertake to open the L/C on Bank of Tokyo or other first class substantial bank, should Global fail to open such L/C, on or before October 5th.

Meantime Bank of Tokyo will confirm in writing tomorrow to us (we will mail you copy of this letter) that they will open the letter of credit in the amount od flrs 217,500.—on or before Oct. 5th as per agreement.

We feel this should be fully satisfactory to owners.

Consequently suggest you draw up the TCP and the necessary guarantee letters and so on, and mail here for signature soonest."

Manners responded in Out 33 on September 9, 1969, in part as follows:

"North Brze onrs satisfied therfr fixture cfmd thnks yr efforts."

Following this exchange of telexes several telexes were exchanged concerning possible cargo for the vessel and other matters. On September 19, 1969, in Out 38, Manners advised Peraco that it had received the proposed letter of credit from the Bank of Tokyo and that it was unsatisfactory in that it was made out to a company which the defendant did not know, and that it referred to "certain conditions" although the defendant had previously specified the type of letter of credit to be furnished. Manners requested Peraco to clarify the situation in order to allow the fears of the owner of said vessel. Peraco responded on the following day in In 40, by stating that the letter of credit was merely "banker's language" and that, if the letter of credit was not opened by Global, Peraco had obligated itself to do so. After this telex, the next relevant telex was from Manners, Out 40, on September 26, 1969 to Peraco. In said telex he stated that the "Boss" of the owner of the M/S North Breeze had just seen the letter of

credit from the Bank of Tokyo, that he considered it worthless, since it was addressed to an unknown company, was in the wrong amount ($217,000 instead of $217,500), and referred to "certain conditions" and that its format was the same as that of an earlier proposed letter which was previously stated to be unsatisfactory. Said telex further stated that since said proposed letter of credit did not conform to the expressed requirements of the owner, it was negotiating elsewhere for the charter of said M/S North Breeze. Peraco responded with telexes on September 27, 1969 expressing its dismay with the existing situation, and asserting its contention that Global had until October 5, 1969 to present the requisite letter of credit and stated that it would endeavor on the following Monday to secure a proper letter of credit from said Bank of Tokyo.

On September 29, 1969, Manners responded with the following telex, Out 41:

"Northbreeze owners consider Charterers unfulfilled their obligations accordance terms fixed and advise vessel now unavailable. Stop. Personally must regret this turn of events which tried retrieved but unsuccessfully. Regret also you didnt see to it that Global had everything tied up right your end especially view owners had their dukes up right from the start."

Peraco replied to this telex in a lengthy telex, In 47, on September 29, 1969. In part said telex read as follows:

"3) In accordance with clause 17 of the cp we hereby on behalf of Global Maritime request immediate arbitration in N Y as per clause 17. Owners must without delay appoint an arbitrator.

4) Failing to appoint an arbitrator, Global Maritime and Peraco will immediately bring this to the New York District Court of USA (have checked this carefully with our legal counsel). There can be no doubt that courts will settle in Global's/our favor consequently we will obtain a court order to arrest and place a lien on any Manners' controlled tonnage calling at a USA port."

Manners responded to said telex on October 1, 1969 in Out 42 which read as follows:

"Received from owners quote

Northbreeze—owners reject your contentions stop. Briefly owners position is that they were entitled to withdraw from negotiations as no concluded agreement had been reached in as much that Global were in breach by failing to comply with major conditions of owners fixing requirements owners will resist any claim by you and/or Global and will counterclaim for all loss which is sustained as the result of your and/or Global's actions to resolve dispute owners are ready to agree a form of New York arbitration by commercial men, The tribunal to have jurisdiction to decide (1) whether there was a concluded contract and if so (2) whether owners or Global liable.

Owners suggest sensible course would be for both sides to instruct New York attorneys to agree form of ad hoc arbitration stop kindly advise name your attorneys and owners shall nominate lawyers to act for them."

Peraco responded to the above telex on October 1, 1969 in In 49 which read as follows:

"In accordance with clause 17 of the subject C.P. Charterers agree to arbitrations. Have owners legal council pls contact Mr. Frank O'Brien, Zock-Petrie, Shenemn and Read, 19 Rector Street, N.Y. NY phone 944–8766 such arbitration to take place immediately and no delay will be tolerated Charterers fully prepared open letter of credit as agreed. However under circumstances will not open the letter of credit, unless owners instruct Charterers to the contrary. This without prejudice to Charterers right under the subj. T.C.P."

On October 3, 1969 Manners replied to said telex in Out 44 which read in pertinent part as follows:

"Received from owners quote

We repeat our previous suggestions regarding arbitration. We are instructing Mr. Sheldon Vogel of Bigham Englar through our London solicitors Ince and Company. No doubt N.Y. counsel can get together to consider form of ad hoc arbitration after Vogel fully instructed whether or not letter of credit now opened is matter for Global/Peraco. Unquote."

On October 4, 1969 Peraco replied to this telex in In 50 as follows:

"Rec'd from Mr. Rodman accept proposal N.Y. arbitration. Our attorney Mr. O'Brien will contact Mr. Vogel."

In addition to said telexes the parties have submitted various affidavits in support of and in opposition to the defendant's motion to compel arbitration and for a stay of these actions pending such arbitration. In support thereof defendant has filed affidavits of Sheldon A. Vogel, a New York attorney who is mentioned in certain of said telexes. The substance of his affidavits is that the final telex of Peraco constituted the acceptance by Global of the proposal by the owner of the M/S North Breeze that its claim be submitted to arbitration. In addition, he deposes that as a result of said exchange of telexes he met with said Frank O'Brien who was then one of Global's attorneys and that as a result of their meeting they concluded that they were not prepared to proceed with the arbitration proceedings as both of them lacked sufficient information and documentation concerning the facts of the dispute. In his affidavit he further states that since he never heard again from Mr. O'Brien concerning the proposed arbitration, he assumed that Global had decided to drop the entire matter. He further deposed that he was shocked to learn of the institution of this action approximately fifteen (15) months after the agreement to arbitrate was made. Annexed to another affidavit of Mr. Vo-

gel, filed in reply to an affidavit of Per A. Arneberg, President of Peraco, stating that Global had never agreed to arbitrate its claim against the defendant is a copy of a letter from Mr. Arneberg to the said Frank O'Brien, dated January 7, 1970, which reads in pertinent part as follows:

"I refer to the fixture of M/S NORTH BREEZE I fully intend as a party to this Charter Party to arbitrate. I have a legal claim as per fixture note attached to the file, namely, approximately '40,000.00'. I should appreciate to learn where this matter now stands and secondly, if you can represent Peraco Chartering Corporation in this matter."

In opposition to said motion to compel arbitration and to stay proceedings in these actions, the plaintiff has filed an affidavit by Norman A. Rodman, the president of Global's New York agent. In substance he contends therein that Global never agreed to submit to arbitration the issue of whether there was a firm agreement of charter, and that in agreeing to arbitration, as it admittedly did, its intention was to secure the M/S North Breeze or a similar vessel for Global's use. He also deposes that Mr. O'Brien, whom Global had chosen to represent it in the arbitration proceedings, had been instructed to attach the M/S North Breeze and to institute proceedings for judicial relief unless the arbitration proceedings began immediately. It is worthy of note that no such action was ever taken by Mr. O'Brien and that the instant action was not initiated by Global until November 20, 1970.

After a careful consideration of all of said telexes and the affidavits filed in support of and in opposition to the defendant's motion to compel arbitration and to stay these actions, I am convinced that Global and North Breeze, by their respective agents, did agree to submit the claim alleged in said C.A. 4457 to arbitration, the arbitration tribunal to have jurisdiction to decide (1) whether there was a concluded contract of charter of said M/S North Breeze and (2)

if so, whether the defendant or Global is liable for the breach thereof.

Under the provisions of the Federal Arbitration Act, 9 U.S.C. § 1 et seq., arbitration agreements which come within its scope are as effectively enforceable as any other contract. American Airlines Inc. v. Louisville & Jefferson CAB, 269 F. 2d 811 (6th Cir. 1959). Senate Rep. No.536, 68th Cong. 1st Sess. (1924); H.R. Rep.No.96, 68th Cong. 1st Sess. (1924). Clearly the agreement between Global and the defendant to arbitrate their dispute is within the provisions of said Act. Accordingly, the defendant's motion in C.A. 4457 to compel the plaintiff to proceed to arbitration of the dispute between them and to stay all proceedings in said action, pending the completion of such arbitration is granted.

In C.A. 4459, as hereinbefore recited, Peraco seeks to recover the amount of commissions alleged to be due and owing to it for negotiating said alleged charter party. It is well settled that such commissions become due only as, if, and when the charter hire is earned and paid unless the charter fails through the owner's fault. Lougheed & Co. Ltd. v. Suzuki, 216 App.Div. 487, 215 N.Y.S. 505 (N.Y.1926). The issues of whether there was a concluded contract of charter of said M/S North Breeze and, if so, whether the defendant or Global is liable are the issues which I have concluded must be referred to arbitration for a determination. Clearly Peraco did not enter into any agreement with the defendant to arbitrate the issue of whether there was a concluded contract of charter of the M/S North Breeze. That fact, however, is not dispositive of the defendant's motion for a stay of proceedings in C.A. 4459. Nederlandse Erts-Tankersmaatschappij v. Isbrandtsen Co., 339 F.2d 440 (2nd Cir. 1964). In that case the Court of Appeals held at pages 441–442:

"Granting of the stay cannot be justifiable under the Arbitration Act. Defendants are not parties to the arbitration agreement. The issues of the present action are not referable to arbitration between the parties.

However, the district court had inherent power to grant the requested stay. While the power to stay has ordinarily been exercised in situations in which another proceeding was pending in the state courts, see, e. g., Milk Drivers [v. Dairymen's League] Co-op. Ass'n, 304 F.2d 913 (2d Cir. 1962); Mottolese v. Kaufman, 176 F.2d 301 (2d Cir. 1949), a stay may also be appropriate where the pending proceeding is an arbitration in which issues involved in the case may be determined. . . .

. . . The defendants have the burden of establishing that a stay is warranted. Without attempting to list all relevant factors, we point out that the defendants should demonstrate to the satisfaction of the court that they have not taken nor will take any steps to hamper the progress of the arbitration proceeding, that the arbitration may be expected to conclude within a reasonable time, and that such delay as may occur will not work undue hardship."

See also, Liquifuels, Inc. v. Hess Oil & Chemical Company, Inc., 281 F.Supp. 596 (S.D.N.Y.1968).

The record before me clearly establishes that the defendant, as owner of the M/S North Breeze, has never sought to delay the arbitration of the claim of Global and has been ready to do so. It promptly appointed Mr. Vogel as its representative to arrange with Global's representative for said arbitration. He conferred with the latter who stated that he lacked sufficient information concerning the existing dispute between Global and the defendant to permit him to proceed immediately and took no further action thereon. Since it was Global which was asserting a claim of breach of a concluded contract of charter, it was incumbent upon it and its representative to take the initiative and to proceed with said arbitration proceedings. There was no burden upon the defendant to do so. The defendant has expressed its willing-

ness to proceed immediately with said arbitration proceedings and there is no reason to believe it will in any way seek to delay such proceedings.

There has been no showing by Peraco that it will be prejudiced in the prosecution of its claim against the defendant by the stay of its action against the defendant pending the arbitration of Global's claim against the defendant. The issue of whether or not there was a concluded contract of charter of the M/S North Breeze to Global will be determined in said arbitration proceeding and thus evidence on that issue should not be needlessly presented in said C.A. 4459. Accordingly, the defendant's motion for a stay of the proceedings in C.A. 4459, pending the completion of the arbitration of Global's claim against the defendant is likewise granted.